Mary CATHEY, Individually and as Guardian *v.* Ronald N. WILLIAMS, et al.

86-60                                          718 S.W.2d 98

Supreme Court of Arkansas
Opinion delivered October 27, 1986

190

*Hixon, Cleveland & Rush,* for appellant.

*Tatum & Sullivan,* by: *Tom Tatum,* for appellees.

GEORGE ROSE SMITH, Justice. This is a medical malpractice suit brought by the appellant, individually and as guardian of her husband, Raymond Cathey, now incompetent. The defendants are the appellees, Dr. Ronald N. Williams and his associates, neurological surgeons. After a two-week trial the verdict and judgment were for the defendants. Without objection the appellants designated an abbreviated record and listed a single point for appeal: The court erred and abused its discretion in allowing physicians who are not neurosurgeons to testify as to the standards of care that a neurosurgeon should provide a patient in Little Rock, and similar localities. The case comes to this court as a tort action. Rule 29(1)(o).

On December 17, 1981, Raymond Cathey fell and injured his head while at work for the Corps of Engineers. He had headaches which became increasingly severe. On December 26 he consulted a doctor in Plainview, who recommended that he be taken to the Baptist Medical Center emergency room in Little Rock, which was done on December 28. There he was referred to Dr. Williams, who examined him and found no abnormal neurological signs. Dr. Williams released him for the night and scheduled a CT scan for the next morning. During the night, however, Cathey suffered a massive intercranial hemorrhage. He was taken back to the medical center, where Dr. Williams ordered an emergency CT scan. That scan disclosed a large isodense subdural hematoma on the right side. An operation was performed, but Cathey has remained helpless and comatose, a permanent condition.

The plaintiff's cause of action is based on the assertion that Dr. Williams was negligent in not ordering a CT (computerized tomography) scan at once instead of postponing it until the next

day. We are told that experts in neurological surgery testified, but the argument on the abbreviated record is confined to the cross-examination of Dr. Martin, who practices family medicine at Ola. Dr. Martin had been Cathey's physician for years and testified at some length. The appellant's argument narrows down to her insistence that this excerpt from Dr. Martin's cross-examination was inadmissible under our medical malpractice statute:

> Q. My question then, Dr. Martin, is this: Based on what you know to be good medical practice and good medical judgment, do you have an opinion as to whether Dr. Williams followed good and sound medical practice and reasonable medical judgment in not ordering a CT scan for Mr. Cathey on an emergency basis on December 28, 1981, when he found no abnormal neurological signs?

> A. Yes, I have an opinion.

> Q. What is that opinion, sir?

> A. It is my opinion that given the fact that he did not find any abnormal findings which could indicate brain injury, and based on the fact that he was also seen by other physicians prior to that who did not find those findings, I would say, in my opinion, he acted appropriately.

Whether the opinion of a family doctor upon the question put by counsel was admissible in this case depends upon the wording of the malpractice statute, the wording of A.R.E. 702, and the proof of Dr. Martin's qualifications to testify as he did.

The pertinent part of the malpractice statute, Ark. Stat. Ann. § 34-2614 (Supp. 1985), reads as follows:

> (A) In any action for medical injury, the plaintiff shall have the burden of proving:

> (1) The degree of skill and learning ordinarily possessed and used by members of the profession of the medical care provider in good standing, engaged in the same type of practice or specialty in the locality in which he practices or in a similar locality; and

> (2) That the medical care provider failed to act in

accordance with such standard . . . .

It will be seen that this section of the act specifies the degree of skill and learning which the plaintiff must prove, a matter not now in issue, but the section does not attempt to specify *how* the plaintiff must prove that standard and its violation. The next section of the act, Section 34-2615(A), provides the answer: "Rule 702 of the Uniform Rules of Evidence [now the Arkansas Rules of Evidence] shall govern the qualifications of expert witnesses." We quote Rule 702:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Whether a witness is qualified to testify as an expert upon a particular question is a matter to be decided within the discretion of the trial court. *Parker* v. *State*, 268 Ark. 441, 597 S.W.2d 586 (1980).

■ The appellant takes the position that no general practitioner is qualified to testify with regard to the standard of skill that must be met by a specialist such as a neurosurgeon. We do. not find that broad statement to be supported by the three cases cited on the point. *Kronke* v. *Danielson*, 108 Ariz. 400, 499 P.2d 156 (1972); *Scarono* v. *Schnoor*, 158 Cal. App. 2d 612, 323 P.2d 178 (1958); *Orcutt* v. *Miller*, 595 P.2d 1191 (Nev. 1979). On the other hand, we agree with both the reasoning and the result in *Evans* v. *Ohanesian*, 38 Cal. App. 3d 125, 112 Cal. Rptr. 236 (1974). There the trial court excluded the expert testimony of one specialist and two general practitioners in the field of dentistry, for various reasons. In reversing the case the appellate court said:

> Nor is it critical whether a medical expert is a general practitioner or a specialist so long as he exhibits knowledge of the subject. Where a duly licensed and practicing physician has gained knowledge of the standard of care applicable to a specialty in which he is not directly engaged but as to which he has an opinion based on education, experience, observation or association with that specialty, his opinion is competent. [Citation.] The reason for not

requiring specialization in a certain field is obvious. Physicians are reluctant to testify against each other. [Citations.] Consequently, when an expert can be found, it is immaterial whether he is a general practitioner or a specialist providing he has knowledge of the standard of care in any given field; otherwise, the plaintiff could never prove a case against a specialist unless he had an expert of the particular specialty, and the plaintiff would never be able to sue a general practitioner unless he had a general practitioner who was willing to testify as an expert. [Citation.]

In the case at bar the issue was not whether Dr. Williams had met the required standard of skill in performing neurological surgery. Rather, it was whether he had exercised the required skill in deciding not to order an immediate CT scan. Dr. Martin had been Cathey's physician since 1970. Dr. Martin testified that as part of his regular practice he had to decide whether or not to recommend CT scans. He explained that various neurological tests are used to determine whether there are neurological abnormalities. Those tests are taught in medical school; every physician is taught to perform them. He demonstrated his own knowledge of the tests. He said that he had never seen a subdural hematoma in which there were no neurological deficits. Additional testimony about the tests used to determine the need for a CT scan was given by Dr. Liebovich, whose specialty was emergency medicine, not neurological surgery.

In a somewhat analogous case we held that an anesthesiologist could testify by affidavit that a surgeon was negligent in a procedure auxiliary to the actual surgery. *Slayton* v. *Brunner*, 276 Ark. 143, 633 S.W.2d 29 (1982). From that opinion:

Appellee Brunner argues that Dr. King, an anesthesiologist, is not qualified to testify as an expert in the specialty of surgery. However, both are medical school graduates licensed to practice in their respective states. Appellant does not allege that appellee was negligent in performing the actual surgical procedure used to repair the ventral hernia and remove the marlex mesh. Negligence is alleged in procedures performed or omitted before and after the actual surgery.

No branch of the medical practice can be isolated from all other branches. Some overlapping is unavoidable. It is common knowledge, for example, that family doctors routinely deliver babies, even though obstetrics is a specialty. We are not holding that general practitioners are qualified to give opinion testimony about matters as to which a specialist's knowledge and skill are essential. We do hold that when the particular issue relates to a question lying within the general practitioner's own area of expertise, he is not prohibited by the malpractice statute from testifying upon that question as an expert.

Affirmed.