Stephen B. WILLIAMSON, M.D. *v.* Steven Craig ELROD, as
*Personal Representative* of the Estate of Floy Elrod, *Deceased*

01-828 72 S.W.3d 489

Supreme Court of Arkansas
Opinion delivered April 25, 2002

*Mitchell, Blackstock, Barnes, Wagoner & Ivers*, by: *Clayton Blackstock* and *Mark Burnette*, for appellant.

*Everett Law Firm*, by: *John C. Everett* and *Elizabeth E. Storey*; and *Milligan Law Firm*, by: *Phillip J. Milligan*, for appellee.

W H. "DUB" ARNOLD, Chief Justice. This is a medical-malpractice action brought by the Estate of Floy Elrod, deceased, against general surgeon Stephen B. Williamson, M.D. Floy Elrod, age sixty-six at death, was survived by her husband of forty-seven years, Tullis Elrod, and two adult sons, Steven Craig Elrod and John Stanley Elrod. At trial, the jury found that Dr. Williamson was negligent. The jury awarded Tullis Elrod $500,000 for loss of consortium; Tullis, John, and Steven Elrod $250,000 for mental anguish; and the Estate of Floy Elrod $100,000 for pain and suffering. Dr. Williamson moved for a

directed verdict at the end of Elrod's case and again at the end of all the evidence; both motions were denied. Dr. Williamson moved for judgment notwithstanding the verdict, remittitur, or a new trial by timely posttrial motions. The motions were denied, and this appeal was filed. We hold that appellant's motion for directed verdict should have been granted as appellee did not meet his burden of proof regarding the standard of care in Arkansas; as such, we reverse and dismiss the case.

Floy Elrod died on April 25, 1996. Appellee brought this cause of action pursuant to the Medical Malpractice Act and the Wrongful Death Act, seeking damages caused by the alleged negligence of the appellant. At the time of her death, Floy Elrod was a patient at Baptist Medical Center, suffering from free air in the abdomen. Floy Elrod had been a patient at Baptist Rehabilitation Center prior to that time, where she was receiving rehabilitation and care for cancer.

On April 25, 1996, Floy Elrod was immediately transferred to Baptist Medical Center (hereafter "Baptist") when a test revealed free air in the abdomen. She was admitted to Baptist by Dr. Brad Baltz, her oncologist. Upon Floy Elrod's admission to Baptist, Dr. Baltz ordered a surgical consult with the defendant. Nurse Garcia, a nurse on duty at the time, testified at trial that she notified the appellant of the consult at 2:15 a.m. on April 25, 1996. While Dr. Baltz contends that Floy Elrod may have elected not to have the surgery, Floy Elrod's entire family testified that she lay on her hospital bed from the time she arrived at Baptist, until her death at 3:27 p.m., waiting for the appellant to arrive to perform the surgery. The family members further testified that she knew she would die without the surgery. The appellant arrived at Floy Elrod's hospital room for the surgical consult twenty-one minutes prior to her death.

At trial, Dr. Samuel Landrum, the appellee's expert witness, testified that if notified of the surgical consult of a patient with free air in the abdomen, a majority of or "most" physicians would have consulted within an hour or less, and therefore, the appellant's failure to arrive for the surgical consult within an hour or less violated the standard of care. Dr. Landrum further testified that

Floy Elrod would have had a 70 percent chance of survival had the defendant arrived for the surgical consult within the hour after being notified, and had the surgery been performed; however, he further testified that he would not have faulted appellant, or any surgeon, if he had consulted with and told Mrs. Elrod that he did *not* recommend the surgery.

■ Appellant argues that the trial court erred in denying his directed-verdict motion and post-trial motions wherein he argued that Elrod's expert, Dr. Samuel Landrum, based his opinions on a standard of care not recognized under Arkansas law. We agree. Dr. Landrum used a standard of care comparing what the majority of doctors in a given area do in a given situation as opposed to using the standard of care dictated by the General Assembly in Ark. Code Ann. § 16-114-206(a)(1) (1987). As such, Elrod did not satisfy the elements of proving a medical malpractice claim. More specifically, Elrod never established what the standard of care was as required by Ark. Code Ann. § 16-114-206(a)(1) through (3), which states:

> *16-114-206. Burden of proof.*
>
> (a) In any action for medical injury, the plaintiff shall have the burden of proving:
>
> (1) The degree of skill and learning *ordinarily* possessed and used by members of the profession of the medical care provider in good standing, engaged in the same type of practice or specialty in the locality in which he practices or in a similar locality;
>
> (2) That the medical care provider failed to act in accordance with that standard; and
>
> (3) That as a proximate result thereof, the injured person suffered injuries which would not otherwise have occurred.

[Emphasis added.]

■ *Black's Law Dictionary* defines "ordinary" as "[o]ccurring in the regular course of events; normal; usual." *Black's Law Dictionary* 1125 (7th ed. 1999). What a "majority" of or "most" physicians in a community would consider to be reasonable medical care in that community is different in meaning from "ordinary" and does not rise to the level of proof of "stan-

dard of care" required by the statutory language in § 16-114-206(a)(1). If "majority" was the standard, it would require a poll of physicians practicing in a community. *Compare Hopper v. Tabor*, Tenn. Ct. App. No. 03A01-9801-CV-00049 (Aug. 19, 1998); *Hood v. Phillips*, 554 S.W.2d 160 (Tex. 1977). In interpreting Ark. Code Ann. § 16-114-206, this Court has held that in any action for medical injury, the plaintiff must prove the applicable standard of care; that the medical provider failed to act in accordance with that standard; and that such failure was a proximate cause of the plaintiff's injuries. *See Blankenship v. Burnett*, 304 Ark. 469, 472, 803 S.W.2d 539 (1991). In such cases, it is not enough for an expert to opine that there was negligence that was the proximate cause of the alleged damages. *Aetna Casualty & Sur. Co. v. Pilcher*, 244 Ark. 11, 424 S.W.2d 181 (1968). The opinion must be stated within a reasonable degree of medical certainty or probability. *Montgomery v. Butler*, 309 Ark. 491, 834 S.W.2d 148 (1992).

■ ■ The burden of proof for a plaintiff in a medical malpractice case is fixed by statute. The statute requires that in any action for a medical injury, expert testimony is necessary regarding the skill and learning possessed and used by medical care providers engaged in that speciality in the same or similar locality. *Dodson v. Charter Behavioral Health Sys., Inc.*, 335 Ark. 96, 983 S.W.2d 98 (1998). The importance of having an expert detail the standard of care and the facts pointing to a breach is evidenced in *Reagan v. City of Piggott*, 305 Ark. 77, 805 S.W.2d 636 (1991), wherein we affirmed a summary judgment when the trial court found that there was no material issue of fact remaining where the expert physician never provided the proper proof to meet the plaintiff's burden of proof under the statute. We stated therein:

> [A]ppellant presented neither expert nor lay testimony as to the appropriate standard of care to be used. Likewise, appellant did not present any evidence that Dr. Ash failed to act in accordance with the standard of care. The only evidence appellant did offer relating to a standard of care or breach thereof was the testimony of Dr. Duckworth, appellant's family physician who ordered the appendectomy. Without stating exactly what the appropriate standard of care was, Dr. Duckworth testified that Dr. Ash acted in accordance with the standard of care. The only other evidence

offered by appellant consisted of the depositions of appellant and his parents; these depositions contained broad statements about the incident but related nothing about a standard of care or breach thereof.

In short, appellant presented no evidence indicating the existence of an issue of fact. To the contrary, the expert testimony presented does not meet the statutory burden of proof.

*Reagan*, 305 Ark. at 80. The record in this case does not reflect that Dr. Landrum ever testified as to what the degree of skill and learning ordinarily possessed by doctors in good standing in Little Rock or similar locales was. By failing to establish this standard, any testimony he gave as to appellant's failure to meet the standard is of no merit because Elrod never initially established the applicable standard of care under which appellant allegedly fell.

 Elrod argues that this argument is not preserved for appeal because appellant never objected during Dr. Landrum's testimony, direct or cross, that the standard of care was not established. We disagree. This is not a factual substantial-evidence issue; rather, it is a question of law regarding whether the elements of a cause of action were met. As such, the appropriate time to challenge the failure to meet the standard of proof was during the directed-verdict motion. To require a party to object that the opposing party did not meet its burden of proof during a witness's testimony would allow the opposing party to then resume questioning to meet that burden. In other words, had appellant objected during Dr. Landrum's testimony that the burden of proof was never established or met, then Elrod would have immediately cured the lack of proof by asking more questions, thus, in essence, shifting the burden of proof to appellant to show that the standard was not met rather than keeping it with Elrod to establish that it was met. Having found that appellee did not meet his burden of proof regarding the standard of care in Arkansas, we reverse and dismiss the case.

Reversed and dismissed.