James G. DODD, Jr., Administrator of the Estate of Stacy Lynn Dodd, Deceased *v.* SPARKS REGIONAL MEDICAL CENTER, Holt-Krock Clinic, PLC, Dr. Joe Dorzab, and Dr. Sally Goforth

CA 04-729                                        204 S.W.3d 579

Court of Appeals of Arkansas
Opinion delivered March 2, 2005

*Law Offices of Charles Carr, P.A.*, by: *Charles Carr* and *Shane Roughley*, for appellant.

*Warner, Smith & Harris, PLC*, by: *G. Alan Wooten* and *Matthew C. Carter*, for appellee.

TERRY CRABTREE, Judge. Appellant James G. Dodd, Jr., the husband of Stacy Lynn Dodd and administrator of her estate, filed this suit in his capacity as administrator for her wrongful death, which was occasioned by suicide. The complaint lodged claims against appellees Dr. Joe Dorzab, Dr. Sally Goforth, and their employer, Holt-Krock Clinic, and Sparks Regional Medical Center (Sparks) where Ms. Dodd was hospitalized when she took her life. Appellant contends on appeal that the trial court erred in concluding that expert testimony was necessary and in finding that the testimony he offered to support the complaint was insufficient as a matter of law. We find no error and affirm the grant of summary judgment.[1]

The undisputed facts of this case reveal that Ms. Dodd, age twenty-three, had been admitted by Dr. Dorzab, a psychiatrist, to Sparks on September 30, 1995, because of suicidal ideation. She was readmitted to Sparks on November 6 after taking an overdose of sleeping pills. She was later admitted to another psychiatric hospital on November 22 by a different physician, who diagnosed major depression with psychosis. She was readmitted to that hospital on December 8 due to suicidal ideation. On each of these occasions, Ms. Dodd left the hospital against medical advice.

On December 12, Ms. Dodd was again admitted to Sparks by Dr. Dorzab for major depression. During this admission, she came under the care of Dr. Sally Goforth, a clinical psychologist. On December 20, Dr. Dorzab requested that appellant initiate involuntary commitment proceedings. Appellant complied with that request, and on December 22 the Probate Court of Crawford County entered a forty-five-day commitment order. In this order it was found that Ms. Dodd was a clear and present danger to herself based on a medical report provided by Dr. Dorzab that described her as being suicidal. Early on the morning of December

---

[1] In an unpublished *per curiam* dated March 3, 2004, we dismissed this appeal for the lack of a final order. Subsequent to our dismissal, the trial court entered a final order by dismissing the John Doe defendants listed in the complaint. The appeal is now properly before us based on a timely notice of appeal from the trial court's amended order.

27, Ms. Dodd hanged herself in her room with a bed sheet tied to a doorstop located at the top of the door leading to her private bathroom. At the time of her death, she was being housed in the intermediate psychiatric unit at Sparks.

In the wrongful-death complaint filed on January 20, 2002,[2] it was alleged that Dr. Dorzab violated the standard of care and was negligent by: (1) failing to make a proper diagnosis; (2) failing to adequately assess the deceased's suicide risk; (3) failing to manage the deceased's suicide risk; (4) failing to prescribe proper medications in appropriate doses; (5) failing to adequately communicate with the hospital staff; (6) failing to provide adequate treatment and care during the Christmas holidays; (7) failing to order proper suicide precautions, including fifteen-minute checks; and (8) failing to use ordinary care for the safety of the deceased.

It was alleged that Dr. Goforth violated the standard of care and was negligent by: (1) failing to assess the deceased's suicide risk; (2) failing to manage the deceased's suicide risk; (3) failing to adequately communicate with Dr. Dorzab and the hospital staff about the deceased's suicide risk; (4) failing to provide adequate counseling for the deceased during her absence for the Christmas holidays; and (5) failing to use ordinary care for the safety of the deceased. The allegations against Sparks included a claim that it was negligent by failing to remove the doorstop from the top of the door in the room in the psychiatric unit.

Appellees ultimately filed motions for summary judgment. Cumulatively, appellees asserted that the allegations in the complaint concerning the diagnosis, treatment, and care of Ms. Dodd stated claims for medical negligence which required the support of expert testimony. They contended that they were entitled to judgment as a matter of law because appellant had failed to produce any expert testimony. In response, appellant offered the affidavits of Dr. Norman F. Westermann and registered-nurse Mary Ann Spencer. In addition, appellant presented the deposition testimony of registered-nurse Nadine Killion and Harold Trisler, who was the director of nursing in charge of the psychiatric unit at the time of Ms. Dodd's death. Appellant also contended that the allegation against Sparks concerning the placement of the doorstop presented

---

[2] The statute of limitations is not at issue in this case. Appellant had previously filed suit within the limitations period but later took a voluntary nonsuit. The present complaint was filed within the one-year savings period.

a claim for ordinary negligence for which expert testimony was not required. Appellees responded that the witnesses appellant offered did not qualify as experts, that there was no testimony setting forth the applicable standard of care, and that appellant had failed to establish that the failure to remove the doorstop was the proximate cause of Ms. Dodd's death.

After a hearing, the trial court granted the motions for summary judgment. The court ruled that the complaint alleged a cause of action for medical negligence, and that the affidavit of Dr. Westermann was "insufficient as a matter of law to create a question of fact for the jury as to the standard of care of a psychiatrist, psychologist, or the operation of a psychiatric unit by a hospital based upon the education, training, and experience of Dr. Westermann as established in his Affidavit." On this basis, the trial court dismissed the claims presented against Dr. Dorzab, Dr. Goforth, and Holt-Krock Clinic. The court further ruled that the affidavit of nurse Spencer did not speak to the issue of proximate cause and that, therefore, Sparks was also entitled to judgment as a matter of law.

■ On appeal, we need only decide if the granting of summary judgment was appropriate based on whether the evidence presented left a material question of fact unanswered. *Robson v. Tinnin,* 322 Ark. 605, 911 S.W.2d 246 (1995). The burden of proving that there is no genuine issue of material fact is upon the movant, and all proof submitted must be viewed favorably to the party resisting the motion. *Watts v. St. Edward Mercy Medical Center,* 74 Ark. App. 406, 49 S.W.2d 149 (2001). Once the moving party makes a prima facie showing of entitlement to summary judgment, the opposing party must meet proof with proof that a genuine issue of material fact exists. *Robson v. Tinnin, supra.*

■ The issues in this case turn on the requirements of the Arkansas Medical Malpractice Act found at Arkansas Code Annotated sections 16-114-201 through 209 (1987). The Act provides that it applies to all causes of action for medical injury. Ark. Code Ann. § 16-114-202. That term is defined in Arkansas Code Annotated section 16-114-201 as:

> "Medical injury" or "injury" means any adverse consequences arising out of or sustained in the course of the professional services being rendered by a medical care provider, whether resulting from negligence, error, or omission in the performance of such services;

> or from rendition of such services without informed consent or in breach of warranty or in violation of contract; or from the failure to diagnose; or from premature abandonment of a patient or of a course of treatment; or from failure to properly maintain equipment or appliances necessary to the rendition of such services; or otherwise arising out of or sustained in the course of such services.

The supreme court has acknowledged the broad scope of this definition. *Dodson v. Charter Behavioral Health System, Inc.,* 335 Ark. 96, 983 S.W.2d 98 (1998).

■■ In actions for medical injury, the plaintiff has the burden of proving three propositions by expert testimony: the applicable standard of care; that the medical provider failed to act in accordance with that standard; and that such failure was the proximate cause of the plaintiff's injuries. Ark. Code Ann. 16-114-206(a); *Williamson v. Elrod,* 348 Ark. 307, 72 S.W.3d 489 (2002). Our courts have held, however, that expert testimony is not *per se* necessary in every malpractice case. *Watts v. St. Edward Mercy Medical Center, supra.* It is well settled that a plaintiff must present expert testimony only when the asserted negligence does not lie within the jury's comprehension as a matter of common knowledge, when the applicable standard of care is not a matter of common knowledge, and when the jury must have the assistance of experts to decide the issue of negligence. *Haase v. Starnes,* 323 Ark. 263, 915 S.W.2d 675 (1996). The court emphasized this point in *Haase v. Starnes* by observing:

> The necessity for the introduction of expert medical testimony in malpractice cases was exhaustively considered in *Lanier v. Trammell,* 207 Ark. 372, 180 S.W.2d 818 (1944). There we held that expert testimony is not required when the asserted negligence lies within the comprehension of a jury of laymen, such as a surgeon's failure to sterilize his instruments or to remove a sponge from the incision before closing it. On the other hand, when the applicable standard of care is not a matter of common knowledge the jury must have the assistance of expert witnesses in coming to a conclusion upon the issue of negligence.

*Id.* at 268, 915 S.W.2d at 678 (quoting *Davis v. Kemp,* 252 Ark. 925, 481 S.W.2d 712 (1972)).

■ First, we quickly dispose of appellant's contention that the trial court erred in ruling that the claims against Dr. Gorzab, Dr. Goforth, and Holt-Krock Clinic stated a cause of action for

medical negligence. The claims against these medical providers involved the failure to properly diagnose, assess, and manage Ms. Dodd's care and treatment. Clearly, such claims fall within the purview of the Medical Malpractice Act. *Dodson v. Charter Behavioral Health System, Inc., supra; Spring Creek Living Center v. Sarrett,* 319 Ark. 259, 890 S.W.2d 598 (1995). Appellant does not seriously argue otherwise. Instead, appellant's primary contention is that the affidavit of Dr. Westermann was sufficient to overcome the motion for summary judgment. We likewise find no merit in this argument.

█ In malpractice cases, a defendant is entitled to summary judgment when it is shown that the plaintiff has no qualified expert to testify as to the applicable standard of care. *Skaggs v. Johnson,* 323 Ark. 320, 915 S.W.2d 253 (1996); *Robson v. Tinnin, supra; Brumley v. Naples,* 320 Ark. 310, 896 S.W.2d 860 (1995). The affidavit of Dr. Westermann fails on both counts.

█ The determination of an expert witness's qualification is within the sound discretion of the trial judge. *First Commercial Trust Co. v. Rank,* 323 Ark. 390, 915 S.W.2d 262 (1996). It is not critical whether the proposed expert is a general practitioner or a specialist so long as he exhibits knowledge of the subject. *Cathey v. Williams,* 290 Ark. 189, 718 S.W.2d 98 (1986). Where a duly licensed and practicing physician has gained knowledge of the standard of care applicable to a specialty in which he is not directly engaged but as to which he has an opinion based on education, experience, observation, or association within that specialty, his opinion is competent. *Id. See also Thomas v. Sessions,* 307 Ark. 203, 818 S.W.2d 940 (1991).

█ According to his affidavit, Dr. Westermann completed medical school in 1956. After a two-year internship at U.A.M.S., he received a year of training "at Fort Roots V.A. Hospital in Little Rock as a staff physician in the Psychiatric Ward." He had otherwise practiced as an anesthesiologist for forty-one years. He stated that in his capacity as an anesthesiologist "a large number of my patients were under psychiatric care." We can find no abuse of discretion in the trial court's determination that Dr. Westermann was not qualified to offer an expert opinion in this matter because the affidavit failed to demonstrate that Dr. Westermann was knowledgeable by either training or experience as to the standard of care for psychiatric patients. Dr. Westermann did not specify in

his affidavit whether he treated patients at Fort Roots for their physical ailments or their psychiatric conditions. In addition, he did not disclose whether he had become intimately familiar with the diagnosis and treatment of psychiatric patients in either his one-year stint at Fort Roots so long ago, or his forty-one year career as an anesthesiologist. We agree with appellees that Dr. Westermann's statements as to his qualifications were vague and conclusory and did not establish sufficient familiarity with the fields of psychiatry or psychology in order to render an expert opinion. *See, e.g., Goodwin v. Harrison,* 300 Ark. 474, 780 S.W.2d 518 (1989). Accordingly, we find no abuse of discretion.

Even if Dr. Westermann were so qualified, his affidavit also falls fundamentally short because it does not include any statements setting forth the standard of care. The standard of care applicable to medical malpractice cases is defined by statute as "the degree of skill and learning ordinarily possessed and used by members of the profession of the medical care provider in good standing, engaged in the same type of practice or specialty in the locality in which he practices or a similar locality." Ark. Code Ann. § 16-114-206(a)(1). In this regard, the doctor stated that he had reviewed the records and had seen the pictures of the door-stop, and then he opined that "it is my professional opinion that since the young woman had attempted suicide approximately one month prior to her death and her history of suicide ideation, she certainly should have been on suicide watch and that doorstop should have not been there to assist her. Further, if the attending doctors and hospital staff had exercised due care, it is more likely than not that this young woman would be alive today." However, mere statements of what treatment should or should not have been provided do not qualify as statements setting forth the applicable standard of care. *Robson v. Tinnin, supra.* It also is not enough for an expert to opine that there was negligence that was the proximate cause of the alleged damages. *Williamson v. Elrod, supra; Ford v. St. Paul Fire & Marine Ins. Co.,* 339 Ark. 434, 5 S.W.3d 460 (1999). Here, the affidavit did not establish the applicable standard of care because it offered nothing more than a statement of what care should have been provided and an opinion that the health care providers failed to exercise due care. Summary judgment was, therefore, appropriate. *Williamson v. Elrod, supra.*

In sum, we affirm the order of summary judgment pertaining to Drs. Dorzab and Goforth and their employer, the Holt-Krock Clinic. The claims appellant made against them were for medical negligence that appellant failed to support by qualified expert opinion setting forth the applicable standard of care.

Appellant next argues that the claim against Sparks for its failure to remove the doorstop presents a claim for ordinary as opposed to medical negligence, and thus expert testimony was not necessary. We need not decide whether this allegation presented a cause of action for ordinary or medical negligence because we agree with the trial court's conclusion that proximate causation, an element which is common to both claims lacking in this case.

Proximate cause is that which in a natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury and without which the result would not have occurred. *Wal-Mart Stores, Inc. v. Kilgore,* 85 Ark. App. 231, 148 S.W.3d 754 (2004). This traditional tort standard requires proof that "but for" the tortfeasor's negligence, the plaintiff's injury or death would not have occurred. *Ford v. St. Paul Fire & Marine Ins. Co., supra.* Proximate causation becomes a question of law if reasonable minds could not differ as to the result. *Dodson v. Charter Behavioral Health System, Inc., supra.* As applied here, it was appellant's burden to demonstrate that the removal of the doorstop would have prevented Ms. Dodd from committing suicide. *See id.* In an effort to meet that burden, appellant relies on the deposition testimony of Harold Trisler, the director of nursing, and the affidavit of nurse Mary Ann Spencer. Trisler stated that persons who commit suicide seek privacy to accomplish their purpose, and Spencer stated that she would have removed the doorstop had she known it was there. It is our conclusion that neither statement demonstrates that Ms. Dodd would not have committed suicide had the doorstop not been there. Consequently, we also affirm the summary judgment granted to Sparks.

Affirmed.

BIRD, J., agrees.

BAKER, J., concurs.