Katherine B. FRYAR *v.*
TOUCHSTONE PHYSICAL THERAPY, INC.
and Michael Teston, Individually

05-394                                           229 S.W.3d 7

Supreme Court of Arkansas
Opinion delivered February 16, 2006

*William T. Finnegan*, for appellant.

*Wright, Lindsey & Jennings, LLP*, by: *Patricia Sievers Harris*, for appellee.

ANNABELLE CLINTON IMBER, Justice. Appellant Katherine Fryar appeals the Pulaski County Circuit Court's grant of summary judgment in favor of Appellees Touchstone Physical Therapy, Inc. (Touchstone) and Michael Teston. The facts underlying this appeal are as follows.

On January 3, 2001, Ms. Fryar was injured in a one-vehicle accident. Her physician referred her to Touchstone for evaluation and treatment. Mr. Teston is a licensed physical therapist employed by Touchstone. From January 22, 2001, through March 30, 2001, Mr. Teston treated Ms. Fryar for her injuries.

Eventually, Ms. Fryar filed a complaint with the Arkansas State Board of Chiropractic Examiners (the Board) related to the physical therapy she received from Mr. Teston. The Board held a hearing on Ms. Fryar's claims on December 10, 2002, and found that Mr. Teston's actions in treating Ms. Fryar violated Ark. Code Ann. § 17-81-303(a)(1) (Repl. 2002), which prohibits the practice and offer to practice chiropractic medicine in the State of Arkansas

without a license. We affirmed the Board's decision in *Teston v. Ark. State Bd. of Chiropractic Exam'rs,* 361 Ark. 300, 206 S.W.3d 796 (2005).

On January 21, 2003, Ms. Fryar filed suit against Appellees, alleging negligent treatment on the part of Mr. Teston and *respondeat superior* liability for Touchstone. On December 2, 2003, Appellees filed a motion in limine to exclude Ms. Fryar's expert witness, Dr. Ronald Colclasure, and a motion for summary judgment. The circuit court held that Dr. Colclasure was not qualified to offer an opinion as to the applicable standard of care, but declined to grant the motion for summary judgment because Ms. Fryar still had time before the scheduled trial date to procure another expert witness.·

On September 21, 2004, Appellees filed a second motion for summary judgment, arguing that the only expert witness identified by Ms. Fryar, Brian Reilly, had no expertise in the field of physical therapy. In response, Ms. Fryar submitted an affidavit by Dr. Reilly, stating that he was a licensed Doctor of Chiropractic Medicine, that he had significant education and experience in matters concerning the spine and nervous system, and that he was familiar with the rules and regulations required of physical therapists under Arkansas law. He further averred that, in his opinion, Mr. Teston violated these rules and regulations and performed therapy on Ms. Fryar that was outside the standard of care for physical therapy in Arkansas. Ms. Fryar also argued in her response to the summary-judgment motion that summary judgment was inappropriate because a material dispute of facts existed as to the position Ms. Fryar was in when the therapy was performed. Finally, she argued that a *prima facie* case for negligence was established on the evidence that Mr. Teston was fined by the Arkansas Board of Chiropractic Examiners for practicing chiropractic medicine without a license. Appellees responded, arguing that Dr. Reilly lacked "intimate knowledge" of physical therapy, that any material issue of fact as to Ms. Fryar's position was not sufficient to overcome summary judgment without expert testimony as to the standard of care, and that the ruling of the Arkansas Board of Chiropractic Examiners was not admissible.

The circuit court granted summary judgment on January 7, 2005, and dismissed the case with prejudice. Ms. Fryar filed a timely notice of appeal. This case was assumed by us as a second or

subsequent appeal. *See Teston v. Ark. State Bd. of Chiropractic Exam'rs, supra.* Jurisdiction is proper pursuant to Ark. Sup. Ct. R. 1-2(a)(7) (2005).

## I. Expert Testimony

For her first point on appeal, Ms. Fryar contends that the circuit court abused its discretion in refusing to allow the testimony of Dr. Brian Reilly. Whether or not an expert witness is qualified to testify at trial falls within the sound discretion of the trial court. *Wolford v. St. Paul Fire and Marine Ins. Co.*, 331 Ark. 426, 961 S.W.2d 743 (1998). The trial court's discretion is not absolute, however, in that a decision to exclude the testimony of an expert witness will be reversed where the trial court has abused its discretion. *Id.*

With regard to Ms. Fryar's argument that the circuit court abused its discretion in excluding the testimony of Dr. Reilly, it is well established that an expert witness need not be a specialist as long as he or she exhibited knowledge of the subject. *Cathey v. Williams*, 290 Ark. 189, 718 S.W.2d 98 (1986); *Pry v. Jones*, 253 Ark. 534, 487 S.W.2d 606 (1973); *Lanier v. Trammell*, 207 Ark. 372, 180 S.W.2d 818 (1944).[1] In *Cathey*, the issue was whether Dr. Williams was negligent in failing to order an emergency CT scan. At trial, a family-practice doctor testified in support of Dr. Williams, and the jury found in favor of Dr. Williams. *Cathey v. Williams, supra.* On appeal, the appellant argued that no general practitioner is qualified to testify with regard to the standard of care that must be met by a specialist such as a neurosurgeon, and that the family doctor's testimony was inadmissible. *Id.* This court refused to adopt such a strict holding, instead adopting the following language from a California appellate court case:

> Nor is it critical whether a medical expert is a general practitioner or a specialist, so long as he exhibits knowledge of the subject. Where a duly licensed and practicing physician has gained knowledge of the standard of care applicable to a specialty in which he is not

---

[1] Arkansas Code Annotated § 16-114-206 (Supp. 2005), mandates that the standard of care, failure to act in accordance with the standard and proximate cause *must* be established by means of expert testimony "provided only by a medical care provider of the same specialty as the defendant . . . ." However, as this statute was not in effect in 2001, it does not govern the instant case.

directly engaged but as to which he has an opinion based on education, experience, observation or association with that specialty, his opinion is competent.

*Id.* at 192-93, 718 S.W.2d at 101 (citing *Evans v. Ohanesian,* 39 Cal. App. 3d 121, 112 Cal. Rptr. 236 (1974)).

In the instant case, Ms. Fryar submitted an affidavit by Dr. Reilly, as well as his resume. According to the affidavit, Dr. Reilly obtained a degree as a Doctor of Chiropractic Medicine from the Palmer College of Chiropractic Medicine in Davenport, Iowa. He also obtained a Master's Degree in the Biomedical Trauma Program from Lynn University in Boca Raton, Florida. In obtaining these degrees, he studied a curriculum that included texts used in the study of physical therapy. Dr. Reilly also averred that he has "thousands of hours in education and training in matters of the human anatomy, particularly the musculoskeletal area of the cervical spine, proper diagnostic protocols, position release therapy, general physical therapy techniques, and x-ray training," and that he is familiar with the rules and regulations governing physical therapists in Arkansas.

While the abuse of discretion standard sets a high bar for reversal, we have, in certain cases, reversed the trial court's exclusion of expert medical testimony where the affidavit by the doctor demonstrated that the doctor was qualified to testify. *See, e.g., Wolford v. St. Paul Fire and Marine Ins. Co., supra; Thomas v. Sessions,* 307 Ark. 203, 818 S.W.2d 940 (1991). In *Thomas,* the appellant challenged the trial court's exclusion of expert medical testimony by Dr. Smith. The issue in the case was whether the emergency room physician was negligent in failing to diagnose and treat a myocardial infarction. *Thomas v. Sessions, supra.* The court stated:

> We recognize that the trial court later excluded Dr. Smith's testimony. But we disagree with that conclusion. Dr. Smith is a graduate of the University of Arkansas School of Medicine and has engaged in the general practice of medicine in Arkansas for twenty years. For the past eleven years he has limited his practice to his office, prior to that he engaged in general hospital duties including emergency room practice. Dr. Smith does not specialize in cardiology but regularly treats patients with cardiac problems and considers himself competent and qualified to render an opinion in the field of cardiology. Dr. Smith completed a general internship at St.

> Vincent Infirmary and has attended continuing medical education courses on a regular basis, including those dealing with cardiology. In short, Dr. Smith was not without the qualifications to testify as a medical expert based on training and experience and appellees have not demonstrated wherein Dr. Smith was incompetent to meet the moderate standards applicable to expert witnesses.

*Id.* at 209, 818 S.W.2d at 943.

Appellees argue that Dr. Reilly did not demonstrate "intimate familiarity" with the area of physical therapy, citing *Goodwin v. Harrison,* 300 Ark. 474, 780 S.W.2d 518 (1989), and *Dodd v. Sparks Reg'l Med. Ctr.,* 90 Ark. App. 191, 204 S.W.3d 579 (2005). In *Goodwin,* this court examined a trial court's refusal to qualify a doctor as an expert in the field of gynecology. *Goodwin v. Harrison, supra.* In upholding the trial court's decision, we laid out the doctor's relevant qualifications:

> The doctor, Robert Laird, never attended a residency program in obstetrics and gynecology and does not specialize in gynecology. When he served his internship in medical school he delivered babies, but since then he spent twenty-eight (28) years, including reserve time, in the Army medical program. He taught pharmacology in a recognized medical school and was head of the research division of a large drug company. He cannot be said to be intimately familiar with gynecology. He has not held a license to practice medicine in over thirty (30) years. He is basically a medical doctor who went into the field of pharmacology.

*Id.* at 487, 780 S.W.2d at 524. The Arkansas Court of Appeals relied on *Goodwin* in reaching a similar conclusion in *Dodd v. Sparks Reg'l Med. Ctr., supra.* In that case, the court of appeals affirmed a trial court's refusal to qualify a doctor as an expert in a case involving psychiatry. The court stated:

> According to his affidavit, Dr. Westermann completed medical school in 1956. After a two-year internship at U.A.M.S., he received a year of training 'at Fort Roots V.A. Hospital in Little Rock as a staff physician in the Psychiatric Ward.' He had otherwise practiced as an anesthesiologist for forty-one years. He stated that in his capacity as an anesthesiologist 'a large number of my patients were under psychiatric care.' We can find no abuse of discretion in the trial court's determination that Dr. Westermann was not qualified to offer an expert opinion in this matter because

the affidavit failed to demonstrate that Dr. Westermann was knowledgeable by either training or experience as to the standard of care for psychiatric patients. Dr. Westermann did not specify in his affidavit whether he treated patients at Fort Roots for their physical ailments or their psychiatric conditions. In addition, he did not disclose whether he had become intimately familiar with the diagnosis and treatment of psychiatric patients in either his one-year stint at Fort Roots so long ago, or his forty-one year career as an anesthesiologist. We agree with appellees that Dr. Westermann's statements as to his qualifications were vague and conclusory and did not establish sufficient familiarity with the fields of psychiatry or psychology in order to render an expert opinion.

*Id.* at 198, 204 S.W.3d 584.

In the instant case, Dr. Reilly's qualifications more closely resemble those held to be sufficient in *Thomas* and are less like those at issue in *Goodwin* and *Dodd*. In *Goodwin*, the doctor's only association with the field of gynecology was during his internship in medical school. Moreover, his current field of emphasis was pharmacology, which is in no way related to the field of gynecology. In contrast, Dr. Reilly averred that he had "thousands of hours in education and training in matters of the human anatomy [and] . . . general physical therapy techniques" as well as a familiarity with the rules and regulations governing physical therapy in Arkansas. Moreover, much like the doctor in *Thomas*, who was not a cardiac specialist but was familiar with cardiac issues from his general practice, a quick examination of Dr. Reilly's resume reveals extensive training in issues of the spine and other musculoskeletal areas, the same areas as are at issue here. Under these circumstances, we conclude that the circuit court abused its discretion in refusing to qualify Dr. Reilly as an expert witness.

Nonetheless, Dr. Reilly's affidavit is still not sufficient to overcome Appellees' summary-judgment motion. Though Dr. Reilly's affidavit states that he "is familiar with the standard of care required of physical therapists under Arkansas law," the affidavit does not state the relevant standard of care with specificity. Summary judgment is appropriate when the expert witness's affidavit does not detail the standard of care. *Williamson v. Elrod*, 348 Ark. 307, 72 S.W.3d 489 (2002). Furthermore, Dr. Reilly's affidavit in no way connects Mr. Teston's alleged negligence with Ms. Fryar's injuries. Although expert testimony is not needed in

every medical malpractice case, such testimony is necessary when the asserted negligence does not lie within the jury's comprehension as a matter of common knowledge, when the applicable standard of care is not a matter of common knowledge, and when the jury must have the assistance of experts to decide the issue of negligence. *Robson v. Tinnin*, 322 Ark. 605, 911 S.W.2d 246 (1995). In this case, where Ms. Fryar was already suffering from neck and spine injuries, any alleged connection between Mr. Teston's treatment and Ms. Fryar's injuries would not be a matter of common knowledge or understanding, and the jury would require the assistance of expert testimony to decide the issue of proximate cause. Dr. Reilly's affidavit does not state with any reasonable degree of medical certainty that Ms. Fryar's injuries were proximately caused by Mr. Teston's alleged negligence, and thus the affidavit does not create a material issue of fact on the question of proximate cause. *Ford v. St. Paul Fire and Marine Ins. Co.*, 339 Ark. 434, 5 S.W.3d 460 (1999). The affidavit is merely a vague and conclusory statement that Mr. Teston's treatment did not conform to the standard of care. *Dodd v. Sparks, supra.* We therefore hold that the circuit court's grant of summary judgment in favor of Appellees was not in error, and we can affirm the judgment as reaching the right result for the wrong reason. *Middleton v. Lockhart,* 355 Ark. 434, 139 S.W.3d 500 (2003).

## II. Summary Judgment

Ms. Fryar's second argument is that the circuit court erred in granting summary judgment because other genuine issues of material fact existed in the case. Specifically, she contends that there is admissible evidence of Appellees' negligence in the form of a decision by the Arkansas State Board of Chiropractic Examiners that Mr. Teston was practicing chiropractic medicine in violation of Ark. Code Ann. § 17-81-303(a)(1) and that there are disputed facts concerning the treatment received by Ms. Fryar.

## A. Board findings

For her first subpoint, Ms. Fryar argues the decision of the Arkansas State Board of Chiropractic Examiners that Mr. Teston was guilty of the unauthorized practice of chiropractic medicine should be admissible as evidence tending to show negligence under AMI-Civ. 4th 601. Arkansas Model Civil Jury Instructions 4th 601 states, "A violation of [this] [statute], although not

necessarily negligence, is evidence of negligence to be considered by you along with all of the other facts and circumstances in the case." AMI-Civ. 4th 601. The decision of whether to admit relevant evidence rests in the sound discretion of the trial court, and our standard of review of such a decision is whether the trial court has abused its discretion. *Arthur v. Zearly*, 337 Ark. 125, 992 S.W.2d 67 (1999); *McCorkle Farms Inc. v. Thompson*, 79 Ark. App. 150, 84 S.W.3d 884 (2002). Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Ark. R. Evid. 401 (2005). Our courts have repeatedly held, however, that a trial judge may exclude evidence, although relevant, if its probative value is *substantially* outweighed by the danger of unfair prejudice. Ark. R. Evid. 403 (2005); *Nations Bank, N.A. v. Murray Guard, Inc.*, 343 Ark. 437, 36 S.W.3d 291 (2001); *McCorkle Farms Inc. v. Thompson, supra.*

In *McCorkle, supra*, the Arkansas Court of Appeals reversed a trial court's admission of findings by the Plant Board Pesticide Committee. In that case, the plaintiff, McCorkle Farms, filed suit against Thompson and others, alleging that the defendants' negligent use of the pesticide 2, 4-D resulted in damage to McCorkle's crops. During the trial, the circuit court allowed testimony from the transcript of a hearing by the Plant Board Pesticide Committee, wherein the board concluded that there was not sufficient evidence to show that the defendant cropduster was responsible for damages outlined in the complaints received by the board. *Id.* at 155, 84 S.W.3d at 887. The jury ultimately found in favor of the defendants, and McCorkle appealed, arguing that the court erred in admitting the conclusions of the Plant Board Pesticide Committee.

The court of appeals, examining Ark. R. Evid. 403, concluded that the admission of the Plant Board's conclusions was in error, stating:

> A practical reason for denying a judgment or administrative agency report evidentiary effect is the difficulty of weighing a judgment or report, considered as evidence, against whatever contrary evidence a party to the current suit might want to present. The difficulty must be especially great for a jury, which is apt to give exaggerated weight to an official finding of a state body. The jury, not the Plant Board, was charged with making factual findings on McCorkle

> Farms' allegations in this case. By having the Plant Board's report in evidence, the jury was placed in a position of being forced to either reach a conclusion different from that reached by an official agency of the State of Arkansas or to adopt that same conclusion, despite believing that the evidence actually supported a different conclusion because it *was* made by an official agency.

*Id.* at 158, 84 S.W.3d at 888. Similarly, in the instant case, the evidentiary effect of the decision by the Arkansas State Board of Chiropractic Examiners finding Mr. Teston guilty of the unauthorized practice of chiropractic medicine would be unfairly prejudicial. Though the Board concluded only that Mr. Teston was guilty of a statutory violation and did *not* find that Mr. Teston's practice of chiropractic medicine was negligent or below the standard of care, a jury would be inclined to reach such a conclusion based solely on the Board's actions. Indeed, in invoking AMI-Civ. 4th 601, Ms. Fryar seems to encourage such a result. This use of the Board's finding that Mr. Teston committed a statutory violation would be unfairly prejudicial, and the circuit court did not abuse its discretion in excluding the evidence.

### B. Factual dispute as to position during treatment

Ms. Fryar's final argument is that summary judgment was inappropriate because questions of material fact existed as to Ms. Fryar's position during treatment and the amount of force used by Mr. Teston in treatment. However, these "questions of fact" will not withstand summary judgment without some explanation of their significance by an expert witness. As noted above, while expert testimony from third party medical witnesses is not essential or even necessary in every medical malpractice case, such testimony *is* needed when the asserted negligence does not lie within the comprehension of a jury of laymen. *Pry v. Jones, supra.* This court has held that in any action for medical injury, the plaintiff must prove the applicable standard of care; that the medical provider failed to act in accordance with that standard; and that such failure was a proximate cause of the alleged damages. *Williamson v. Elrod, supra.* Here, even if the jury were to resolve the question of whether Ms. Fryar was in a seated or supine position, it would not be able to answer the critical questions concerning the applicable standard of care and proximate cause without some guidance on the significance of the treatment position. Thus, the

mere fact that some disagreement exists as to her exact position during treatment is not enough to create a genuine issue of material fact sufficient to overcome summary judgment.

Affirmed.