MIKE MURPHY, Judge
Appellant Lee Arthur Johnson was allegedly injured during a physical-therapy *146 session at Fenter Physical Therapy. He sued, and the appellees moved for summary judgment for failure to offer expert testimony to support the elements of a medical-malpractice claim. The circuit court granted the motion and Johnson brings this timely appeal. We affirm.
I. Background
Johnson had surgery on his left knee on September 11, 2012. He was subsequently referred to physical therapy. On November 5, Johnson began attending physical therapy at Fenter Physical Therapy in West Memphis, Arkansas. On November 9, Johnson alleged he was attending physical therapy when, while his left knee was being manipulated by one of the therapists, Sarah Schafer, he experienced excruciating pain and heard a loud "pop." He sought medical treatment and a second knee surgery took place later in November. Prior to the surgery, doctors believed Johnson may have re-torn his patellar tendon, but once they were inside, it was discovered that there was a small tear in the retinaculum, the tissue next to the patellar tendon, and that it was bleeding. This tissue had been repaired in the previous surgery, but it was retorn. The doctors let the blood out of the knee and stitched up the tear. Johnson had been on blood thinners at the time of the second trauma, and one expert, Dr. Jay Lipke, explained that people who are on blood thinners can bruise easily and bleed badly. He explained that it was the bleeding that caused the need for the second surgery.
Johnson filed suit on November 5, 2014, against Schafer and Fenter Physical Therapy. In his complaint, Johnson alleged that Schafer failed "to operate at the standard of care required of a physical therapist and that as a result, he suffered a re-injury of his tendon, which required a second surgery to repair." After discovery, Schafer and Fenter Physical Therapy moved for summary judgment, alleging that Johnson lacked the expert proof necessary to support his claim for medical negligence. The circuit court granted the motion for summary judgment, finding that Johnson failed to establish by expert testimony that the appellees breached the applicable standard of care in a manner that caused injury to Johnson. Johnson now timely appeals, arguing that summary judgment was inappropriate.
II. Standard of Review
Summary judgment is appropriate if no genuine issues of material fact exist for trial. Neal v. Sparks Reg'l Med. Ctr. , 2012 Ark. 328, at 7, 422 S.W.3d 116, 120. Once the moving party has demonstrated an entitlement to summary judgment pursuant to Arkansas Rule of Civil Procedure 56, Arkansas law shifts the burden to the non-moving party, who must show that a genuine issue of material fact remains. Flentje v. First Nat'l. Bank of Wynne , 340 Ark. 563, 569, 11 S.W.3d 531, 536 (2000). At this point, the responding party "must discard the shielding cloak of formal allegations and meet proof with proof by showing a genuine issue as to a material fact." Id.
In medical-malpractice actions, unless the asserted negligence could be comprehended by a jury as a matter of common knowledge, a plaintiff has the additional burden of proving three propositions by expert testimony: the applicable standard of care; the medical provider's failure to act in accordance with that standard; and that the failure was the proximate cause of the plaintiff's injuries. Ark. Code Ann. § 16-114-206(a). When the defendant demonstrates the plaintiff's failure to produce the requisite expert testimony, the defendant has demonstrated that no genuine issues of material fact exist and is *147 therefore entitled to summary judgment as a matter of law. Hamilton v. Allen , 100 Ark. App. 240, 249, 267 S.W.3d 627, 634 (2007).
III. Discussion
The circuit court ruled that Johnson did not establish any one of the above-listed elements by expert testimony. On appeal, Johnson makes the following two arguments: (1) that expert testimony was established, and (2) that even if it was not established, expert testimony is unnecessary because the negligence could be comprehended by a jury as a matter of common knowledge.
A. Expert Testimony
To support his argument that he established that the appellees breached the applicable standard of care in a manner that caused injury to him, Johnson directs this court's attention to evidence from three witnesses: Dr. Duane "Scott" Davis, a professor of physical therapy and the program director for the physical therapy school at Marshall University in West Virginia; physical therapist Mark Wagner; and Dr. Jay Lipke, an orthopedic surgeon with over 40 years of experience.
1. Dr. Davis
On appeal, Johnson first claims that the affidavit from Dr. Davis establishes the standard of care. In pertinent part, the affidavit provided:
Based on my review I am of the opinion, and I state this with a reasonable degree of physical therapy certainty, that the Plaintiff, Lee Arthur Johnson, was injured in the therapy. Assuming the pop occurred during the stretching, it was not documented in the report of the physical therapist in this case. It is my opinion that the failure of the physical therapy staff, including the assistant, who did the work at the time of the complaint of the pop by Lee Arthur Johnson, did not document the incident and did not refer this to the therapist in what should be described as a change of status. The physical therapy assistant did not advise the therapist as to the incident, and should have, and the failure to document and to advise the therapist is a deviation from the standard of care under these circumstances.
If the physical therapy assistant reported this to the therapist then it could be referred to a [physician] for treatment.
The problem with Johnson's reliance on Dr. Davis's testimony is twofold. First, at best, it provides that the breach of the standard of care was the failure to report any incident, and Johnson has not established he has suffered any injury due to any failure to report. Second, in Fryar v. Touchstone Physical Therapy, Inc. , our supreme court held that "vague and conclusory statements" that a certain treatment "did not conform to the standard of care" are not sufficient to establish proximate cause capable of withstanding the scrutiny of summary judgment. 365 Ark. 295, 301-02, 229 S.W.3d 7, 12-13 (2006) (holding that summary judgment was appropriate because a medical expert's affidavit did not connect the physical therapist's alleged negligence with the plaintiff's injuries).
2. Mark Wagner
Next, Johnson points us to the following exchange between his counsel, Mr. Hodges, and licensed physical therapist, Mark Wagner, during depositions. Johnson asserts that this testimony establishes the standard of care and that Schafer breached it while treating Johnson.
MR. HODGES : Okay. If it turns out that the jury believes that there was some type of tear or something that occurred *148 with Sarah Schafer on November 9 that injured Mr. Johnson to the point he had to have a second surgery, would that be below the standard of care for the conduct of this physical therapist? I'm not asking you to assume that.
MR. WAGNER : Right. It would be, yes.
MR. HODGES : It would be?
MR. WAGNER : Yes.
MR. HODGES : So if, in fact, this is true, that we contend that he experienced this problem on November 9 -- from a physical standpoint -- based on a physical therapy session with Sarah Schafer, and that he had a 25-percent patellar tear, he had some torn stitches, all that would be below the standard of care for the physical therapist. Correct?
MR. WAGNER : Yes.
...
MR. HODGES : Is that a "yes"?
MR. WAGNER : It would be below, yes.
MR. HODGES : And so because you don't want that to happen when you get physical therapy. Correct?
MR. WAGNER : That is correct. There are times where something might happen, whether that be an injury or irritation of tissue, whatever it may be, but that is not what our goal is to be.
MR. HODGES : And it was not within the standard of care?
...
MR. WAGNER : It's not within the standard of care.
This testimony, like Dr. Davis's, is again too vague to accomplish what Johnson contends it does. The standard of care is not stated with specificity and it does not establish that Johnson's injuries were proximately caused by Schafer. See, e.g. , Fryar, supra , at 301, 229 S.W.3d at 12 ("Dr. Reilly's affidavit in no way connects [the physical therapist's] alleged negligence with Ms. Fryar's injuries.").
3. Dr. Lipke
Johnson next argues that the deposed testimony of Dr. Jay Lipke, an orthopedic surgeon, establishes the standard of care and causation required by statute. However, at the outset of Dr. Lipke's deposition, the parties agreed that the standard of care applicable to physical therapists was outside the scope of Dr. Lipke's opinions and that Dr. Lipke's opinions were based on his knowledge as an orthopedic surgeon.
During the deposition, Dr. Lipke testified about both of Johnson's surgeries and why the second one was necessary. He explained that the second surgery was necessary because Johnson's knee was, essentially, filled with blood from a small tear in it due to Johnson's use of blood-thinning medication. Dr. Lipke stated that "anybody on Coumadin is always at risk for bleeding," and he agreed with the statement that a physical therapist would know that a person on Coumadin could potentially experience the problem Johnson did. Dr. Lipke even agreed that the stretching at physical therapy probably caused the bleeding. Even still, Dr. Lipke never testified about what the standard of care is for physical therapists treating knee-surgery patients on blood thinners or that Schafer's actions constituted a breach of that care. In fact, Dr. Lipke even went on to say that bleeding is just a risk patients like Johnson have to take to "get the knee moving."
After review, we agree with the appellees that Johnson did not establish the requisite elements by expert testimony.
B. Are Experts Even Necessary?
In the alternative, Johnson argues that even if the expert testimony is not *149 sufficient to satisfy the subpoints of Arkansas Code Annotated section 16-114-206(a), it does not matter, because the asserted negligence lies within the jury's comprehension as a matter of common knowledge, and expert testimony is only necessary when the jury must have the assistance of experts to decide the issue of negligence. Robson v. Tinnin , 322 Ark. 605, 911 S.W.2d 246 (1995).
The vast majority of our cases considering this issue hold that expert medical testimony is necessary because the alleged medical negligence is not within the comprehension of a jury of laymen. See, e.g. , Mitchell v. Lincoln , 366 Ark. 592, 599, 237 S.W.3d 455, 460 (2006) (collecting cases). Accordingly, a plaintiff may proceed on his claim for medical negligence without the required expert testimony, but only if he can establish that (1) the asserted negligence lies within the jury's comprehension as a matter of common knowledge, (2) the applicable standard of care is a matter of common knowledge, and (3) the jury does not need assistance of experts to decide the issue of negligence. Lee v. Martindale , 103 Ark. App. 36, 40, 286 S.W.3d 169, 172 (2008). The classic examples of instances in which these elements are satisfied include when a surgeon might fail to sterilize the instruments or forget to remove a sponge before closing an incision. See, e.g. , Dodd v. Sparks Reg'l Med. Ctr. , 90 Ark. App. 191, 197, 204 S.W.3d 579, 583 (2005).
Here, at a minimum, Johnson's case would require the explanation of knee anatomy, two knee surgeries, physical therapy rehabilitation practices and procedures, and the pharmacology of anticoagulants. In Fryar , our supreme court held that expert testimony was necessary because the patient had preexisting "neck and spine injuries." 365 Ark. at 302, 229 S.W.3d at 12-13. The present facts are, frankly, far more complex than those in Fryar and do not justify a departure from the general rule that a plaintiff must prove a medical-malpractice claim through expert testimony.
Affirmed.
Harrison and Hixson, JJ., agree.