Cite as 2026 Ark. App. 76

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-24-597

| | |
|---|---|
| RISIE HOWARD, SPECIAL ADMINISTRATRIX FOR THE ESTATE OF MRS. GEORGE HOWARD, JR. <br> APPELLANT <br><br> V. <br><br> BAPTIST HEALTH A.K.A. BAPTIST HEALTH HOME HEALTH NETWORK; DIAMOND RISK INSURANCE CO., L.L.C.; JOHN HARRIS, M.D.; LEAH WILLETT, BSN, RN, INDIVIDUALLY; ALICIA BRUCKS, SLP, INDIVIDUALLY; AND BRANDY M. CANTWELL, PT, INDIVIDUALLY <br> APPELLEES | Opinion Delivered  February 4, 2026 <br><br> APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, ELEVENTH DIVISION [NO. 60CV-21-4589] <br><br> HONORABLE PATRICIA JAMES, JUDGE <br><br><br><br> AFFIRMED |

**WAYMOND M. BROWN, Judge**

This is an appeal from an order granting summary judgment in a medical-malpractice case related to medical care provided to Vivian Howard in the months prior to her death.  Appellant Risie Howard, as special administratrix for the estate of Mrs. George Howard, Jr. (Vivian), filed an amended complaint against appellees Baptist Health A.K.A. Baptist Health Home Health Network; Diamond Risk Insurance Co., L.L.C.; Dr. John Harris; and three individually named defendants—Leah Willett, RN; Alicia Brucks, speech language pathologist; and Brandi Cantwell, a Baptist Home

Health physical therapist (collectively "Baptist Health").[1] The circuit court granted Baptist Health's motion for summary judgment, and Howard brought this appeal. We affirm.

Howard alleges that on July 18, 2019, due to breathing difficulties, Vivian sought treatment in the Baptist Health emergency department, where she was admitted and remained until she was discharged on July 27. Due to infrequent garment changes, Vivian suffered a deterioration in the skin of the sacral area. The wound team lead, registered nurse Leah Willett, proceeded to treat the wound with an Acticoat 7 dressing, instead of using Iodosorb gel, as advised by Howard. Howard contends that the treatment left Vivian's skin severely burned, leaving two open holes "surrounded by redness, a series of water-filled blisters, raised and swollen whelps." She claims that due to negligence, what was initially a "minor skin break" became a serious wound and that Baptist Health fraudulently concealed the negligence by altering medical records to reflect that Vivian entered the hospital with a more serious wound.

In September, Vivian returned to Baptist Health for treatment of the skin burned by the wound team during her July hospital stay. The wound was treated with Dakin's solution that caused intense pain and suffering. The pain and suffering "could have been avoided if [Baptist Health] had maintained the proper standard of care when [Vivian] had been a patient at Baptist in July." Additionally, during the September admission, speech therapists diagnosed Vivian with dysphagia, or difficulty swallowing, and prescribed the addition of Hormel thickener to her beverages and meals.

---

[1]Dr. Harris was dismissed from the case for improper venue; our supreme court dismissed the appeal of that ruling for lack of an appealable order. Here, Howard failed to include the order of dismissal in the appeal record. However, the notice of appeal does not designate the dismissal order, and Howard concedes Dr. Harris's dismissal from the action.

2

On discharge, speech therapist Alicia Brucks prescribed the thickener to be added to Vivian's at-home meals and beverages.

Howard alleges that on October 1, during a follow-up visit at a Baptist Health Clinic, Dr. John Harris failed to diagnose high levels of sodium in Vivian's blood, and as a result, Vivian suffered numerous heart attacks on October 15. Howard attributes the high sodium levels to the Hormel thickener prescribed by Alicia Brucks, along with the sodium hypochlorite-based Dakin's solution used to treat Vivian's sacral area wounds. She claims that this ultimately caused Vivian's death on October 20.

On July 27, 2021, Howard filed an amended complaint against Baptist Health alleging claims of fraudulent concealment, breach of contract, negligence, pain and suffering, failure to diagnose and wrongful death, abuse, and loss of parental consortium.[2] Baptist Health moved for summary judgment, asserting that the circuit court should dismiss the case with prejudice because Howard "has no qualified expert who will testify that Baptist Health breached the applicable standard of care[ ]" to support her medical-malpractice claims. The circuit court granted the motion for summary judgment, finding that Howard failed to meet proof with proof as required by Arkansas Rule of Civil Procedure 56, and "none of the affidavits and depositions [she] uses in support of her position indicate where an expert of any kind has stated that any of the defendants have breached the standard of care, which is a requirement under the Arkansas Medical Malpractice Act." Howard's subsequent motion for reconsideration was denied.

---

[2]The action was initially filed in federal court but was dismissed.

Summary judgment is appropriate if no genuine issues of material fact exist for trial.[3] Once the moving party has established a prima facie case showing entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact.[4] On appellate review, we determine if summary judgment was appropriate by deciding whether the evidentiary items presented by the moving party in support of its motion leave a material fact unanswered.[5] This court views the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party.[6]

In medical-malpractice actions, unless the asserted negligence could be comprehended by a jury as a matter of common knowledge, a plaintiff has the additional burden of proving three propositions by expert testimony: the applicable standard of care; the medical provider's failure to act in accordance with that standard; and that the failure was the proximate cause of the plaintiff's injuries.[7] When the defendant demonstrates the plaintiff's failure to produce the requisite expert testimony, the defendant has demonstrated that no genuine issues of material fact exist and is

---

[3] *Neal v. Sparks Reg'l Med. Ctr.*, 2012 Ark. 328, 422 S.W.3d 116.

[4] *Scott v. Nichol*, 2022 Ark. App. 255, 645 S.W.3d 369.

[5] *Id.*

[6] *Id.*

[7] Ark. Code Ann. § 16-114-206(a) (Repl. 2016).

therefore entitled to summary judgment as a matter of law.[8] The moving party is not required to support its motion with affidavits or other materials further negating the plaintiff's claim.[9]

The circuit court, in granting summary judgment and closing the case, ruled that (1) all of Howard's claims fall under the Arkansas Medical Malpractice Act as an action for medical injury; and (2) Howard failed to produce the requisite expert testimony to establish a breach of the standard of care. On appeal, Howard contends that (1) expert testimony was established; and (2) claims against the three individually named parties remain.

To support her contention that she produced the required expert testimony, Howard relies on the opinion of G. Edward Mallory, D.O. According to his affidavit notarized on July 31, 2021, Dr. Mallory is board certified in emergency medicine in the state of Florida. In his initial affidavit, Dr. Mallory stated that, according to Vivian's medical records from Jefferson Regional Medical Center ("JRMC"), not Baptist Health, she received nutritional supplementation from Baptist Health that was high in sodium, which can lead to dehydration and hypernatremia.[10] He explained that hypernatremia can lead to hypertension, chronic kidney disease, congestive heart failure, seizures, coma, and death. He stated that when Vivian arrived at JRMC on October 15, 2019, her chloride and sodium levels were very high, and this was "the main reason, or a major contributory factor" as to why she arrived at the hospital in cardiac arrest. Dr. Mallory opined that "Baptist Health was negligent in their care and treatment of [Vivian,]" and their negligence was a major contributory

---

[8]*Johnson v. Schafer*, 2018 Ark. App. 630, 565 S.W3d 144.

[9]*See* Ark. R. Civ. P. 56.

[10]Hypernatremia is defined as an abnormally high concentration of sodium in the blood.

5

factor in her death. Howard also provided a document titled "Ms. Vivian Howard Medical Records Report" dated February 8, 2021, in which Dr. Mallory stated,

> I found no examples of malpractice in the medical records regarding JRMC. The only example of medical mistake I found was the high sodium liquid prescribed by Baptist for you to put in [Vivian's] feedings to thicken them. I feel this was the main reason [she] was so ill appearing when she arrived to JRMC on October 15, 2019. However, I don't feel this meets the standard of malpractice.

Dr. Mallory was deposed on October 26, 2023. At the outset of the deposition, he incorrectly identified the defendants as JRMC, Baptist Health, and possibly Hormel Foods. He also incorrectly declared that he had not executed an affidavit in this case and stated that he could not comment on something that he could not remember doing. Importantly, Dr. Mallory testified that Baptist Health was not negligent and had not breached the standard of care.

Q. I mean, my question is: As you're sitting here today in this deposition, do you believe Baptist Hospital was negligent?

A. No.

. . . .

Q. Was any employee or healthcare provider of Baptist Hospital or Baptist Health in your opinion negligent?

A. Based on the records sent to me, no.

Q. What is your understanding of your role in this case?

A. I was asked to review some medical records regarding the Jefferson Regional Medical Center on October 15, 2019, when Ms. Vivian Howard presented there. I was asked to review the records to determine if anyone during that hospitalization in the emergency department caused any medical malpractice, for which I didn't find any medical negligence. And that's pretty much it.

Dr. Mallory agreed that because he had not reviewed records from Baptist Health, he could not comment under oath or give opinion testimony as to anything related to the care that Vivian was

6

provided at Baptist Health. He further agreed that he needed to withdraw the opinion expressed in his prior affidavit. Although he maintained that Baptist Health "should have monitored [Vivian's] sodium levels," it did not rise to the level of medical negligence. Additionally, Dr. Mallory testified that there can be many causes for high sodium levels. He stated that when a "90-something-year-old patient" such as Vivian with a documented history of dysphagia and potential kidney disease comes to the emergency department with high sodium serum levels, he would first suspect the cause to be decreased water intake—dehydration—and his second concern would be the consumption of a high-sodium product. The most likely cause of the high sodium level would be that the patient is not consuming enough water or fluid because she has dysphagia. Moreover, Dr. Mallory stated that he was unfamiliar with the individually named defendants in this case.

Howard was obligated, pursuant to the Medical Malpractice Act, to demonstrate with expert testimony the standard of care, a breach of that standard of care, and causation. Dr. Mallory's conflicting testimony wholly failed to provide support for the required elements. Although Dr. Mallory opined in his affidavit that Baptist Health acted negligently and breached the standard of care, in his subsequent deposition, he withdrew that opinion and testified that he found no medical negligence on behalf of Baptist Health.

To the extent that Howard asserts that issues with the Zoom link provided for Dr. Mallory's deposition caused him confusion, she failed to raise the argument below. This court does not address arguments raised for the first time on appeal.[11]

---

[11]*Scott v. Barnes*, 2024 Ark. App. 418, 698 S.W.3d 394.

Howard filed a motion for reconsideration on May 30, 2024. In the motion to reconsider, Howard states:

> The original discovery deadline was June 10, 2024 (or later with agreement between counsel) based on the initial trial schedule filed on January 19, 2023 and our leading expert due to his work schedule and scheduled vacation did not have time to have his revised, post-deposition, affidavit notarized before the May 2, 2024 summary judgment hearing. His statements reaffirm his initial statement that Baptist Health was negligent and failed to meet the reasonable standard of medical care.

Accompanying the motion was an unsworn revised affidavit from Dr. Mallory. He stated that, after reviewing Vivian's medical records from Baptist Health, JRMC, and Little Rock Diagnostic Clinic, it was his opinion that reasonable grounds exist to initiate a medical-negligence claim against Baptist Health.

> Based on the review of the medical record and a reasonable degree of medical probability, Baptist [Health] and its personnel caring for Ms. Vivian Howard failed to meet the standard of care when they neglected to set up a program to monitor Ms. Vivian Howard's serum sodium levels [sic] this negligence described above was a major contributory factor to the death of Ms. Howard in 2019.

The circuit court denied the motion. Howard now challenges the denial. However, we find her arguments unpersuasive. A witness may offer admissible testimony by affidavit, which is defined as a written declaration under oath, made without notice to the adverse party.[12] The oath or affirmation must be administered by an official authorized to do so. A court cannot consider an affidavit that fails to meet these rigid statutory requirements.[13] Facts stated in an affidavit must be admissible in evidence if they are to be relied upon in granting or denying summary judgment.[14] It is undisputed

---

[12]*See* Ark. Code Ann. § 16-40-103(b).

[13]*See Jones v. Jones*, 326 Ark. 481, 931 S.W.2d 767 (1996).

[14]*Flentje v. First Nat'l Bank of Wynne*, 340 Ark. 563, 11 S.W.3d 531 (2000).

8

that Dr. Mallory's revised affidavit was not notarized. The circuit court properly refused to consider his noncompliant affidavit because it was not sworn under penalty of perjury.

Moreover, an affidavit that is inherently and blatantly inconsistent with prior deposition testimony may not be used to establish a question of fact to ward off the grant of a summary-judgment motion.[15] Here, Dr. Mallory's deposition testimony was that Baptist Health and its employees were not negligent; however, in his revised affidavit, Dr. Mallory opined that Baptist Health failed to meet the standard of care. Howard could not rely on the contradictory affidavit to avoid summary judgment.

Next, Howard argues that the circuit court erred in granting summary judgment on all her claims, including the claims against the individually named defendants. She asserts that not all the causes of action fall under the jurisdiction of the Arkansas Medical Malpractice Act and that those remaining claims do not require expert-witness testimony. Howard contends that the circuit court erroneously "lumped all the claims into one[.]"

Howard's complaint asserted claims of fraudulent concealment, breach of contract, negligence, pain and suffering, failure to diagnose and wrongful death, abuse, and loss of parental consortium. The Arkansas Medical Malpractice Act specifies that an action for medical injury means all actions against a medical provider, whether based in tort, contract, or otherwise, to recover damages on account of medical injury.[16] A medical injury is defined, in part, as any adverse

---

[15]*Lee v. Martindale*, 103 Ark. App. 36, 286 S.W.3d 169 (2008).

[16]Ark. Code Ann. § 16-114-201(1); *see Epps v. Ouachita Cnty. Med. Ctr.*, 2021 Ark. App. 389, 636 S.W.3d 787.

9

consequences arising out of or sustained in the course of the professional services being rendered by a medical care provider to a patient or resident, whether resulting from negligence, error, or omission in the performance of such services.[17] Further, medical care provider means a physician, certified registered nurse anesthetist, physician's assistant, nurse, optometrist, chiropractor, physical therapist, dentist, podiatrist, pharmacist, veterinarian, hospital, nursing home, community mental health center, psychologist, clinic, or not-for-profit home healthcare agency licensed by the state or otherwise lawfully providing professional medical care or services, or an officer, employee, or agent thereof acting in the course and scope of employment in the providing of such medical care or medical services.[18] It is apparent that the each and every cause of action alleged in this case—and the medical injury resulting therefrom—arose due to the medical care Vivian received from Baptist Health and its providers. Thus, all the claims, including those specific to the individually named defendants—Willett, Brucks, and Cantwell—are subject to the expert-testimony requirement of the medical malpractice act.

Last, Howard argues that the claims against Willett, Brucks, and Cantwell do not require an expert witness. A plaintiff may proceed on claims for medical negligence without the required expert testimony if he or she can establish that (1) the asserted negligence lies within the jury's comprehension as a matter of common knowledge; (2) the applicable standard of care is a matter of common knowledge; and (3) the jury does not need the assistance of experts to decide the issue of negligence.[19] Examples of the limited instances in which these elements are satisfied include when a

[17]Ark. Code Ann. § 16-114-201(3).

[18]Ark. Code Ann. § 16-114-201(2).
[19]*Lee, supra.*

surgeon might fail to sterilize the instruments or forget to remove a sponge before closing an incision.[20]

Howard contends that the burns and wounds Willett caused to Vivian's skin, the hip dislocation and bruises resulting from Cantwell's alleged abuse, and Brucks's negligence in prescribing high-sodium Hormel products all fall within the comprehension of the average layperson. Dr. Mallory, Howard's own purported expert, testified in his deposition that, according to medical records, Vivian suffered from "a host of medical problems." We cannot say that the applicable standard of care for a patient of Vivian's advanced age and complex medical condition is a matter of common knowledge. This case does not present the same obvious negligent acts as those cases involving a surgeon's failure to sterilize instruments or leaving foreign objects inside a patient's body following surgical procedures.

Because Howard failed to produce sufficient expert testimony, we affirm the order granting summary judgment in favor of Baptist Health, including those defendants individually named, and closing the case.

Affirmed.

WOOD and HIXSON, JJ., agree.

*George Howard Jr. Legal Center, L.L.C.*, by: *Risie Howard*, for appellant.

*Mitchell, Williams, Selig, Gates & Woodyard, PLLC*, by: *Graham Talley* and *Cara D. Butler*, for separate appellees Baptist Health; Diamond Risk Insurance Company, LLC; Leah Willett; Alicia Brucks; and Brandy Cantwell.

---

[20]*Johnson*, *supra*.

11

*Wright, Lindsey & Jennings LLP*, by: *Gary D. Marts, Jr.*; and *Scott D. Provencher*, for separate appellee John Harris, M.D.