Cite as 2024 Ark. App. 507

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-23-386

| | |
|---|---|
| PATSY NEWTON | **Opinion Delivered** October 23, 2024 |
| APPELLANT | APPEAL FROM THE DREW COUNTY CIRCUIT COURT [NO. 22CV-14-6] |
| V. | |
| DR. KELLY SHRUM | HONORABLE ROBERT B. GIBSON III, JUDGE |
| APPELLEE | |
| | AFFIRMED |

## STEPHANIE POTTER BARRETT, Judge

Appellant Patsy Newton appeals the Drew County Circuit Court's grant of summary judgment in favor of appellee Dr. Kelly Shrum. On appeal, Newton argues that the circuit court erred in granting summary judgment on the basis that Newton's expert, Dr. Vernon Johnson, did not satisfy the locality rule for medical-malpractice actions and was therefore not a qualified medical expert. We affirm.

In January 2012, Newton was referred by her treating physician to Dr. Shrum, a gynecologist practicing in Monticello, Arkansas, due to severe pelvic pain. While Newton had undergone a total abdominal hysterectomy in 2007, she had retained both her fallopian tubes and her ovaries, where large ovarian cysts had formed. Newton also suffered from stress incontinence. After Newton's initial visit, Dr. Shrum proposed performing a laparoscopic bilateral salpingo-oopherectomy (LBSO), a surgery that removes both of the

patient's ovaries and her fallopian tubes. Newton agreed, and surgery was scheduled for January 25, 2012, at Drew Memorial Hospital.

Prior to the LBSO, Dr. David Lupo performed a cystoscopy, a procedure that allows a doctor to view the inside of the bladder and urethra, and he placed bilateral ureteral stents inside Newton. Dr. Shrum performed the LBSO, and then Dr. Lupo performed a pubovaginal sling, a surgery that repairs, supports, and prevents urine leaks. Dr. Shrum's surgical notes indicated that he removed both ovaries and fallopian tubes and sent them to pathology.

Newton continued to experience severe abdominal pain after the surgical procedures, necessitating a visit to the Bradley County Medical Center emergency room on February 23; she was transported to Drew Memorial Hospital where she was admitted. Newton was seen by Dr. Shrum on February 24; in his discharge summary, he noted that Newton was four weeks post LBSO with PV sling. Newton had a follow-up visit with Dr. Shrum on February 27; at that time, he performed an ultrasound and informed Newton that he had found a cyst on her left side. Newton followed up with her treating physician and was ultimately referred to UAMS Women's Clinic, where a July 2, 2012 ultrasound revealed that her left ovary contained a large cyst, which was surgically removed on March 7, 2013.

Newton filed a medical-malpractice action in the Drew County Circuit Court on January 10, 2014, alleging that Dr. Shrum was negligent in failing to remove her left ovary in the January 25, 2012 surgery when he indicated that he had removed both of her ovaries and her fallopian tubes. Newton alleged that Dr. Shrum failed to properly diagnose her

condition; caused a delay in the proper diagnosis of her condition; failed to properly perform the LBSO; failed to inform her or obtain her consent regarding the possibility that an ovary may not have been removed; and failed to properly diagnose the failure to remove her left ovary and that his negligence was the proximate cause of her damages. Dr. Shrum denied that he was negligent in performing Newton's surgery.

On November 1, 2022, the circuit court held a hearing to dispose of several pending motions; important to the issue on appeal was Dr. Shrum's motion for summary judgment asserting that expert testimony was required for a medical-malpractice action, and Newton had not produced expert-witness evidence establishing a failure to abide by the standard of care. Newton asserted that the issue had been resolved because Dr. Johnson had been deposed and a trial date had been set, but Dr. Shrum asserted that the summary-judgment motion regarding expert testimony had never been heard. On November 8, the circuit court entered an order regarding the various motions taken up on November 1; the court took Dr. Shrum's motion for summary judgment under advisement, and it gave Newton until December 2, 2022, to supplement any "new opinions" of experts.

On December 19, 2022, Dr. Shrum filed a supplement to his motion for summary judgment, alleging that Newton was bound by Dr. Johnson's opinions since she had not supplemented with any additional expert testimony, and the December 2, 2022 deadline had passed. Dr. Shrum asserted that Dr. Johnson did not meet the standard-of-care threshold required under Arkansas law because he had not provided testimony regarding the local standard of care in Monticello or a similar community, and his deposition

testimony failed to demonstrate that he was familiar with the standard of care in Monticello or a similar locality.

At the January 23, 2023 hearing on Dr. Shrum's motion for summary judgment, Dr. Shrum argued that Dr. Johnson was not qualified to testify as an expert because he testified only about a national standard of care, not the local standard of care in Drew County, Arkansas. In support of his argument, Dr. Shrum presented portions of Dr. Johnson's deposition testimony regarding his answers as to whether he was familiar with Dr. Shrum or Drew Memorial Hospital, his opinion as to the standard of care that should be applied to Dr. Shrum in this instance, and his familiarity with hospitals such as Drew Memorial Hospital:

> Q. Okay. Have you done any research on any issues connected with this case yourself?
>
> A. No.
>
> Q. So you have not researched the medical literature. True?
>
> A. True.
>
> Q. Have you done any research into Dr. Shrum?
>
> A. No.
>
> Q. Okay.
>
> A. The only information I saw on Dr. Shrum was the information in the OneDrive, which was just his curriculum vitae. He trained, basically, in Oklahoma.
>
> Q. Okay.

4

A. Now he's in Arkansas.

Q. Right. Have you done any research into Monticello, Arkansas, or the Drew Memorial Hospital?

A. No.

. . . .

A. My feeling is that the standard of care should be what a reasonable physician—what would be expected of a reasonable physician who is board-certified by the American Board of OB/GYN or the American Board of Osteopathic Physicians would expect the average physician to function in.

Q. And I assume that that doesn't matter to you what locality they are in?

A. It is a national standard of care.

Q. Okay. That's what you are applying in this case—

A. That is correct.

. . . .

Q. Have you or are you familiar with hospitals in counties where there are only one hospital? In other words, there is only one place that an individual can go in the whole county. That hospital provides all the care. Are you familiar with that?

A. I have not practiced in those areas.

Q. Okay. But are you familiar with—

A. Yes.

Q. Okay. And that is the issue. You may not have practiced in that area, but are you familiar—my questions just are limited to your familiarity with those sorts of hospitals.

A. Yes.

5

Q.     Okay.  And then, are you familiar with localities where the population may have been under like 6,000 or around 6,000, maybe 5,000 people that are actually the total populus of that area?

A.     Yes.

A.     Sure.  There are a lot of hospitals like that in Arkansas and also New Mexico, Arizona.  Yes, I am.  The answer is yes.

Q.     Okay.  And You're familiar with those hospitals?  Those sorts of hospitals?

A.     Yes.

Q.     Okay.  Now, with respect to all of those questions that I've asked, are you also familiar with the standard of care that is expected of physicians that work, operate, and practice in those particular facilities?

       And I know you talked abut a national standard of care.  I am not talking about that.  So I don't want to hear anything about a national standard of care.  I am asking you, are you familiar with the standard of care in those settings?

A,     There are local standards of care, which I would be familiar with.  But then there is—when there is board certification involved, regardless of where you are at, it raises to a national standard of care.  In other words, once you join an organization, then you are bound by its rules.

Q.     Got you.

A.     And those supersede the local standard of care.

Q.     I understand.  What I am primarily concerned about is this issue—I am not concerned about anything with the national standard of care.  What I want to know from you is, regardless of whatever the national standard of care may be, are you familiar with the local standard of care in settings that I have just described to you, where you have maybe only one hospital in the entire county or the city; you have maybe under 15 to 20 local doctors that—maybe only one or a couple of doctors that might do gynecological work, that sort of thing? Are you familiar with that local standard of care?

A.     I'm familiar with the local standard of care that's going to be limited based upon your resources, hospital-based resources and hospital-based equipment.

> But those physicians, once they become—if they're family practice, once they become American associated or board certified through family practice, they are obligated to provide a minimum standard of care to the patient. So yes, I'm familiar with it, but it doesn't—because it's a smaller community hospital, it does not strip them of the ability to deliver. . . .

Dr. Shrum argued that Dr. Johnson testified only to a national standard of care applicable to obstetricians and gynecologists; even though he agreed upon questioning by Newton's counsel that he was familiar with populations of five thousand to six thousand people where there is only one hospital in the county, Dr. Johnson testified that he knew nothing about Monticello or Drew County; and he was not familiar with the local community.

Newton's counsel countered that Dr. Johnson had stated that, although he had never practiced in an area where there was only one hospital, he was familiar with localities where the population was around six thousand people and where there are maybe ten general-practice doctors and only two or three specialty doctors; he said that he would be familiar with local standards of care where there were limitations on hospital-based resources, but when there was board certification, it was raised to the national standard of care. Dr. Shrum's counsel responded that even though he said that he was familiar with the local standard of care, Dr. Johnson never provided any facts for a local standard of care and opined only that there was a national standard of care.

In granting Dr. Shrum's motion for summary judgment, the circuit court found that the only thing clear to it was that Dr. Johnson contended that Dr. Shrum had violated a national standard of care that would somehow supersede any local standard of care. It found

7

that Dr. Johnson admitted he knew nothing about the Drew County community or its medical facilities and that at no point did Dr. Johnson state what the standard of medical care for Drew County should be.

Summary judgment is appropriate if no genuine issues of material fact exist for trial. *Duke v. Mullis*, 2024 Ark. App. 419, ___ S.W.3d ___. Once the moving party has demonstrated an entitlement to summary judgment, Arkansas law shifts the burden to the nonmoving party, who must show that a genuine issue of material fact remains by meeting proof with proof to show a genuine issue as to a material fact. *Id.*

In medical-malpractice actions, unless the asserted negligence can be comprehended by a jury as a matter of common knowledge, a plaintiff has the additional burden of proving three propositions by expert testimony: (1) the applicable standard of care; (2) the medical provider's failure to act in accordance with that standard; and (3) that the failure was the proximate cause of the plaintiff's injuries. Ark. Code Ann. § 16-114-206(a) (Repl. 2016).[1] When the defendant demonstrates the plaintiff's failure to produce the requisite expert testimony, the defendant has demonstrated that no genuine issues of material fact exist and is therefore entitled to summary judgment as a matter of law. *Johnson v. Schafer*, 2018 Ark. App. 630, 565 S.W.3d 144.

---

[1]The portion of this statute limiting expert opinions to medical-care providers of the same specialty as the defendant was held unconstitutional in *Broussard v. St. Edward Mercy Health System, Inc.*, 2012 Ark. 14, 386 S.W.3d 385.

Our supreme court has endorsed the locality rule as to the standard of care in Arkansas. *Plymate v. Martinelli*, 2013 Ark. 194. Newton cites *Grice v. Atkinson*, 308 Ark. 637, 826 S.W.2d 810 (1992), in support of her argument that Dr. Johnson's testimony was sufficient to satisfy the locality rule, arguing that Arkansas's locality rule is not stringent because the expert in that case did not give the locality of his practice. Newton misapprehends the locality-rule requirement.

In *Shaffer v. Yang*, 2010 Ark. App. 97, at 2, this court held, "The statute permits the local standard of care to be established by analogy through proof of the standard of care in similar localities. However, in order to describe the standard of care in similar localities, the expert must have sufficient relevant knowledge of the locality where the alleged negligence occurred to be able to identify localities that are similar." "[A]n expert need not be familiar with the practice in the particular locality, but must demonstrate a familiarity with the standard of practice in a similar locality, either by his testimony or by other testimony showing the similarity of localities." *Mitchell v. Lincoln*, 366 Ark. 592, 600, 237 S.W.3d 455, 461 (2006).

As demonstrated by the excerpted portions of Dr. Johnson's deposition testimony, the only applicable standard of care in his opinion was a national standard of care. However, our supreme court held in *Plymate*, *supra*, that the locality rule is the standard of care in Arkansas, and it declined to adopt the use of a national standard. Although Dr. Johnson stated that he was familiar with the local standard of care, he failed to articulate any standard

9

other than a national standard of care, which is not sufficient to meet Arkansas's locality rule.

Affirmed.

G<small>RUBER</small> and M<small>URPHY</small>, JJ., agree.

*Willard Proctor, Jr., P.A.*, by: *Willard Proctor, Jr.*, for appellant.

*Reece Moore McNeill Pendergraft*, by: *Paul D. McNeill* and *Dustin R. Darst*, for appellee.