Cite as 2026 Ark. App. 73

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-24-488

|  |  |  |
|---|---|---|
| BFT RENTAL, LLC | | Opinion Delivered February 4, 2026 |
| | APPELLANT | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT [NO. 72CV-23-1131] |
| V. | | |
| ARKANSAS STATE HIGHWAY COMMISSION | | HONORABLE WILLIAM MARTIN, JUDGE |
| | APPELLEE | AFFIRMED |

**MIKE MURPHY, Judge**

Appellant BFT Rentals, LLC, appeals the denial of its motion for new trial. BFT owned a piece of property running along Highway 112, which was condemned by the Arkansas Highway Department through eminent domain as part of a highway-widening project. We affirm.

The issue at trial was how much money to award BFT as just compensation. Before trial, the Commission deposited $1,480,513 into the registry of the court, representing what the Commission believed to be just compensation for the taking.

I. *Summary of Trial and Procedural Posture*

At trial, the jury heard testimony from Jessica Hester, an architect with Verdant Studio, who was hired by BFT. She had started working on the project for BFT in October

2021 to create a master plan for its sixty-five-acre site, and she worked with the City of Fayetteville to get four parcels rezoned. The rezoning was obtained in April 2022 and allowed the land to be used for mixed-use development, "so it has both commercial and residential by-right applications inside of it . . . intended to create space that services the adjacent community." She did not know the value per square foot or per acre.

BFT then called Jeff Pederson, a commercial real estate broker. Pederson testified that he visited the site and prepared a listing-price opinion for the property in June 2022. He explained that commercial real estate pricing is typically expressed in dollars per square foot, and on the basis of his analysis, he valued the property at approximately $20 per square foot. He said that this figure was "conservative" considering the market in the area. Pederson used an income approach to valuation and supported his opinion with exhibits showing comparable pricing for raw land at $20 per square foot.

Lee Autrey testified next. He was vice president of sales for a company owned by the same owners of BFT. He testified that the owners valued their land at $20 per square foot. He said he was not a real estate professional. BFT then rested.

The Highway Commission called one of its engineers to explain the Highway 112 project and introduced some aerial views of the property. It then called Jason Crump, a registered licensed and certified appraiser. The company he was working for at the time, JLL Evaluation Advisor Services, was contracted by the department of transportation in 2022 to provide appraisal services for the Highway 112 project. He discussed his qualifications,

2

employment history, and experience and then explained how he went about valuing the land at issue for his appraisal:

> So we take a look at the subject, how it's being impacted, and work through the process of -- of in this case using the sales comparison approach where we go out into the market. If you've had your home appraised, you kind of know the process. You go out in the market and try to find homes that are similar to yours and put a number on it. That's what we did with this acreage tract.

Crump was qualified as an expert without objection. He discussed some of the elements of the BFT tract and said, "It is in the path of [ ] what I would consider the future growth of Fayetteville." He testified about a tract right around the corner from the subject property. It was similarly zoned, thirty-six acres, and the highway department acquired it for $3.50 per square foot in 2022. He testified about another comparable property, albeit in Springdale, but similar in nature, that sold for $1.72 per square foot in June 2022. A third property he used sold for $2.00 per square foot in 2021. He testified that he calculated just compensation to BFT for the property to be $1,480,513, which included $6460 in compensation for a temporary easement to perform the work on the property. Crump said that amount comes to "a little less than $3 a square foot" for the land purchased, and that calculation still reflected his expert opinion today. He did not agree with Pederson's valuation because "[t]his property is not there yet . . . from a market standpoint," and that a developer would not currently buy the land at the price that Pederson recommended because the infrastructure is not currently there. And while he acknowledged that he had "no doubt" that some properties in Fayetteville are going for $15 to $16 a square foot, "I just don't see it for [ ] this tract . . . there's not the residential mix there yet. It's coming. It's not there."

At the conclusion of the evidence, counsel and the court worked through jury instructions. Relevant here, the following were read to the jury:

Instruction Number 10. In arriving at the amount of just compensation to which BFT Rental, LLC is entitled, you first determine the fair market value of the whole property immediately before the taking, and then you determine the fair market value of the remaining property immediately after the taking. The compensation BFT Rental, LLC is entitled to recover is the difference, if any, between the fair market value of the whole property immediately before the taking and the fair market value of the remaining property immediately after the taking.

In determining the fair market value of the remaining property immediately after the taking, you should consider the remaining property as if the Arkansas State Highway Commission's project was completed and permanently in place according to the construction plans now on file.

Instruction Number 11. When I use the expression fair market value, I mean the amount of money which a purchaser who is willing but not obligated to buy the property would pay to an owner who was willing but not obligated to sell it, taking into consideration all uses to which the land is adapted and might reasonably be applied. Fair market value is not necessarily based on the use to which the property was being put at the date of the taking, but is to be based on the fair market value of the land put to its highest and best use.

. . . .

Instruction 16. BFT Rental, LLC also seeks just compensation for a temporary construction easement taken by the Arkansas State Highway Commission. The amount of just compensation for a temporary construction easement is the fair rental value of the property within the easement area for the time – or excuse me ~ for the period of time it was or will be used.

The jury retired for deliberations. During deliberation, a note was sent out that stated, "Do we have to choose one of the proposed amounts or set our own per square foot amount?" Counsel for the highway department said they could set their own amount, and counsel for BFT agreed. The court said, "So can I say, 'No, you do not have to choose one

of the proposed amounts, you may set your own per square foot amount?'" Counsel for both parties agreed.

The jury rendered the following verdict: "We the jury find and fix just compensation for Tract 9 and easements on 9E-1, 9E-2, 9E-3, and 9E-4 to be awarded defendant BFT Rental, LLC, et al, at $3.50 per square foot."

The jury was dismissed, and the court and counsel for both parties discussed on the record what amount that value per square foot calculated to when multiplied over the total acreage condemned. They arrived at $1,744,155, and counsel for BFT was asked to prepare the precedent. The court acknowledged that their math at the bench might not be exact and tasked counsel to work together to make sure the final judgment reflected a correct dollar amount.

The final judgment was entered on February 26, 2024, and was signed as approved to form by counsel for both parties. It set out the land to be condemned by metes and bounds and recited the jury verdict verbatim.

The judgment went on to provide that

[t]he verdict was unanimous, and signed by all 12 jurors including the foreman, in proper form, and accepted by the Court. The Verdict reads at $3.50 per square foot. All attorney's present agreed this award was based on a total square footage of 498,330 square feet. This brings the total awarded by the Jury to $1,744,155.00, which was read into the record.

On March 7, 2024, BFT filed its motion for new trial. In that motion, BFT explained that it was wrong for counsel to calculate the final judgment amount because that was a task for the jury. The motion further explained that the jury was also not correctly instructed

because it returned a verdict for the land acquired but was silent regarding compensation for the temporary-construction easements. BFT asserted that the verdict was contrary to law, there was error in the assessment of the amount of recovery, and there was an irregularity in the proceedings that prevented it from having a fair trial.

The motion for new trial was deemed denied on April 8, 2024. The time for filing a notice of appeal ran on May 8. BFT filed its notice of appeal on May 6 designating "the order entered April 8, 2024, denying the Defendant's motion for new trial." BFT then filed an amended notice of appeal on May 9. The amended notice provided that the denial was actually not through order but by operation of law.

On appeal, BFT argues that the circuit court erred when it denied its motion for new trial.

## II. *Appellate Jurisdiction*

The Highway Commission argues on appeal that BFT's amended notice of appeal was untimely and somehow changed the standard of review.

Rule 4 of the Arkansas Rules of Appellate Procedure–Civil outlines the time frames and conditions for filing a notice of appeal. Generally, a notice of appeal must be filed within thirty days from the entry of the judgment, decree, or order appealed from. However, Rule 4(b) provides that when a motion for new trial under Arkansas Rule of Civil Procedure 59(a) is filed within ten days of the entry of the judgment, if that motion is neither granted nor denied within thirty days of its filing, then the motion is deemed denied on the thirtieth day.

Appellants then have thirty days from the date the motion is deemed denied to file their notice of appeal. Ark. R. App. P.–Civ. 4(b)(b)(1).

This is what BFT means when it provided in its amended notice of appeal that it was from the denial that occurred by operation of law. The Commission asserts that this amended notice of appeal is "an improper attempt to alter the Court's standard of review regarding the denial of the Motion for New Trial from 'abuse of discretion' to 'de novo.'" The amended notice of appeal was not an attempt to change the standard of review. The Commission likely draws its confusion from the fact that this court reviews issues of law de novo. *State v. Cassell*, 2013 Ark. 221, 427 S.W.3d 663.

Nor was the original notice of appeal untimely. Rule 3(e) of the Arkansas Rules of Appellate Procedure–Civil provides that a notice of appeal shall "designate the judgment, decree, order or part thereof appealed from." Ark. R. App. P.–Civ. 3(e)(ii). While the filing of a notice of appeal is jurisdictional, our supreme court has required only substantial compliance with the procedural steps set forth in Rule 3(e). *Emis v. Emis*, 2017 Ark. 52, at 3, 508 S.W.3d 886, 887–88. The supreme court has held that a notice of appeal that fails to designate the judgment or order appealed from as required under Rule 3(e) is deficient, but such a deficiency is not necessarily fatal to the notice of appeal when it is clear which order the appellant is appealing, and the notice of appeal was filed timely as to that order. *Emis*, *supra.* Here, it is clear that BFT is appealing the denial of its motion for new trial. The fact that the notice said "order" instead of "operation of law" is not fatal.

III. *Discussion*

7

BFT asserts on appeal that it is entitled to a new trial pursuant to Arkansas Rule of Civil Procedure 59(a)(1), (a)(5) and (a)(6), which provides in pertinent part that a new trial may be granted when there is an "irregularity in the proceedings . . . by which the party was prevented from having a fair trial," "error in the assessment of the amount of recovery, whether too large or too small," or "the verdict or decision is clearly contrary to the preponderance of the evidence or is contrary to the law." BFT argues there are four independent reasons why it was erroneous for the circuit court to deny its motion: first, the jury used an improper method to determine just compensation; second, the $1,744,155 sum was set by counsel and the court, and not the jury; third, the jury erred in assessing compensation and lacked sufficient evidence to support its determination; and fourth, the judgment did not include compensation for the temporary-construction easements.

A motion for new trial is addressed to the sound discretion of the circuit court. *In re GNB III Tr.*, 2019 Ark. App. 171, at 6, 574 S.W.3d 159, 163. We will not reverse a circuit court's refusal to grant a motion for new trial unless an abuse of discretion is shown. *Id.* An abuse of discretion means a discretion improvidently exercised, i.e., exercised thoughtlessly and without due consideration. *Id.* When evaluating the denial of a motion for new trial under Rule 59(a)(6), we will affirm if the circuit court's decision is supported by substantial evidence. *Brantley v. Nw. Ark. Hosps., LLC*, 2014 Ark. App. 275, 435 S.W.3d 1.

BFT's first, second, and fourth points may be addressed together.

Absent evidence to the contrary, the jury is presumed to obey the court's instructions. *KW-DW Props., LLC v. Ark. State Highway Comm'n*, 2019 Ark. 95, at 6, 571 S.W.3d 6, 9. BFT

makes no argument that the jury was incorrectly instructed. And when the jury asked for clarification, BFT counsel agreed that the court may instruct the jury that it may set out a "per square foot amount." Accordingly, even if the jury did use an improper method, which we decline to address, under the doctrine of invited error, BFT may not now argue that this calculation method was somehow so deficient a new trial is warranted. Under the doctrine of invited error, parties may not propose a particular approach to calculating damages and then challenge it on appeal. *J.I. Case Co. v. Seabaugh*, 10 Ark. App. 186, 189, 662 S.W.2d 193, 195 (1983).

BFT states that the jury did not return a verdict, it returned a math problem, requiring those outside the jury to speculate as to the result the jury sought to achieve. This flows into BFT's second point, which was that it was improper for the court and counsel to arrive at a final dollar amount, and not the jury. But the time to correct a verdict on a claim that the jury misunderstood the instructions is before the jury is discharged. BFT did not submit interrogatories or poll the jury; in fact, it proceeded to participate in the discussion of how many acres to which the verdict formula would apply and the final amount for the court to put in the judgment.

It is well established that the failure to object to some irregularity in a verdict before the discharge of the jury constitutes a waiver of that irregularity. *Fisher v. Valco Farms*, 328 Ark. 741, 745, 945 S.W.2d 369, 371 (1997). To the extent that BFT claims there were irregularities in how the jury arrived at its $3.50-per-square-foot sum or what that meant, the time to correct or clarify the verdict was before the jury was discharged. *Id.* And to the extent

9

that BFT argues that it was improper for the court and counsel to use that figure to calculate the final amount, its arguments are waived by virtue of acquiescing to the action. *KW-DW Props., LLC*, 2019 Ark. 95, at 8, 571 S.W.3d at 11.

BFT's fourth argument on appeal is that the judgment does not contain compensation for imposition of the temporary-construction easements; however, the jury verdict clearly states that the award of $3.50 per square foot was for the acquisition in fee "*and easements* on 9E-1, 9E-2, 9E-3, and 9E-4." (Emphasis added.)

Finally, we address BFT's argument that the jury erred in finding just compensation because there was no sufficient evidence to support its determination. BFT couches this as an Arkansas Rule of Civil Procedure 59(a)(5) argument, because it argues the jury erred in the assessment but pairs it with the argument that there was no sufficient evidence to support the jury's determination. There is no substantial-evidence element within Rule 59(a)(5), but there is one in subdivision (a)(6). Regardless, to the extent that BFT does challenge the evidence, we note that when a circuit court denies a motion for a new trial on the ground that the verdict was not clearly contrary to a preponderance of the evidence, the test on appeal is whether there is substantial evidence to support the jury verdict. *Id.* In such instances, we must view the evidence in the light most favorable to the party against whom the motion was made and must affirm if there was any substantial evidence to support the verdict. *Id.* Substantial evidence is evidence that is of sufficient force and character to compel a conclusion one way or another. *Id.* It must force the mind to pass beyond suspicion and conjecture. *Id.*

Substantial evidence supports the award of $3.50 per square foot, such that it was. The Commission's expert testified to comparable properties that sold between $1.72 and $3.50 per square foot. He estimated the BFT land to be "a little less than $3 a square foot." Accordingly, the award of $3.50 per square foot is not an arbitrary figure and could reasonably include an amount representing the temporary easements. Any remaining errors in the verdict, if there were any, resulted from either invitation or consent.

To be clear, Rule 59(a)(5) error-in-assessment claims do not require preservation through directed-verdict motions and cannot be waived merely by failing to object earlier in the proceedings, *Fisher Trucking, Inc. v. Fleet Lease, Inc.*, 304 Ark. 451, 803 S.W.2d 288 (1991), but there is a difference between failing to object and active participation. *Compare Fisher*, *supra*, *with Gray v. Moreland*, 2010 Ark. App. 207, 374 S.W.3d 178. In *Gray*, we held that the appellant waived his challenge to the damages amount on appeal because during jury deliberations, when the jury asked for "the dollar amount that each party is asking for," the appellant's trial attorney affirmatively indicated he had no objections to the specific $9,385 amount requested by the opposing party. 2010 Ark. App. 207, at 6, 374 S.W.3d at 182, By consenting to communicate that specific figure to the jury without objection, the appellant invited any error in that damages assessment and could not later challenge it under Rule 59(a)(5).

Affirmed.

KLAPPENBACH, C.J., and VIRDEN, J., agree.

*Tona M. DeMers* and *Robert S. Tschiemer*, for appellant.

*Stephen P. Lowman*, for appellee.