Cite as 2026 Ark. App. 252

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-25-133

SHAWN LIGGETT, AS SPECIAL
ADMINISTRATOR OF THE ESTATE OF
JAMES RANDAL LIGGETT, DECEASED
APPELLANT

V.

TIMOTHY YOUNG, MD
APPELLEE

Opinion Delivered April 22, 2026

APPEAL FROM THE SHARP
COUNTY CIRCUIT COURT
[NO. 68CV-21-125]

HONORABLE ROB RATTON, JUDGE

AFFIRMED

**MIKE MURPHY, Judge**

The appellant, Shawn Liggett, as special administrator of the estate of James Randal

Liggett, deceased, appeals the decision of the Sharp County Circuit Court granting appellee

Dr. Timothy Young's motion for summary judgment. We affirm.

In October 2021, the estate of Mr. Liggett sued Dr. Young, alleging medical

malpractice and wrongful death. The complaint alleged that Mr. Liggett passed away due to

complications from his type 1 diabetes that were avoidable but for Dr. Young's negligence.

Mr. Liggett was having trouble with his new insulin pump and high blood sugar and saw Dr.

Young, his friend and doctor of over forty years, in clinic for his very high blood sugar on

two occasions between the receipt of his pump and his hospitalization.

During discovery, Dr. Isaacs was identified as the medical expert for the estate. He is

an endocrinologist practicing in Atlanta, Georgia, and an adjunct instructor at Emory

University School of Medicine. Dr. Isaacs practices in a suburb of Atlanta in an endocrinology clinic with four endocrinologists and approximately eleven rheumatologists. He holds privileges in the major hospital systems in Atlanta and has spent his entire career in the Atlanta area. He reviewed the medical records in this case.

Dr. Isaacs did not know what types of medical facilities were available in Cherokee Village, Arkansas, nor did he know its population or major industries or the demographics of the people there. He has never been to Arkansas. Concerning the standard of care, he opined that while "there may be some limitations with access to care in smaller towns where certain things may not be available . . . in general, the standard of care for the management of diabetes is universal throughout the U.S."

He said that the standard of care in Atlanta is applicable to physicians in Cherokee Village, but he stated, "I think there could be some nuances related to access to care. And so without knowing the details of Cherokee Village, I would say that the general principles, separating out access issues, is the same." He did not know what the "nuances" or "access issues" were as they relate to Cherokee Village other than his understanding that patients "had to travel to a different county to see an endocrinologist and things to that level." The following exchange took place during his deposition:

Q.     Is the standard of care in Atlanta different from the standard of care in other communities across the nation?

A.     No.

Q.     Nationally, it's the same?

A. I mean, again, there could be nuances related to access to care, but in general, the answer is it's the same.

. . . .

Q. Does the standard of care, in your mind, take into account the differences in resources, customs, and habits of the community?

A. It can.

Q. But you just don't know what those are specific to Cherokee Village?

A. I don't, but I also just the comment that I would make is that a lot of the standard of care is very easy to get nowadays in the U.S. as opposed to say in other countries. Access to insulin, access to CGMs, access to pumps, access to testing supplies, whatever it is, that seems to be pretty universal these days because it's available. Things are shipped, so you don't have to have a pharmacy right there, a place where you can pick it up. And the training, it should be the same.

Dr. Young also disclosed an expert witness, Dr. Kent Covert. During his deposition, Dr. Covert testified that he was not aware of any difference between the standard of care for treating diabetes in Cherokee Village, Arkansas, and Atlanta, Georgia.

Dr. Young moved for summary judgment, arguing that the estate's expert could not opine about the standard of care in Cherokee Village or a similar locality. The circuit court granted Dr. Young's motion, finding that Dr. Isaacs could not satisfy the locality rule because he did not know anything about Cherokee Village and was therefore unable to compare it to any locality of which he is familiar. The estate moved for a new trial. In that motion, it referred the circuit court to additional portions of Dr. Isaacs's testimony where he stated that

3

he knew that Dr. Young saw a wide variety of family-practice patients, ages six months and up, and that Dr. Young did not do surgery or obstetrics or manage insulin pumps. That motion was deemed denied.

The estate now brings this appeal, arguing that the circuit court erred in granting Dr. Young's motion for summary judgment and denying its motion for new trial.

Summary judgment is appropriate if no genuine issues of material fact exist for trial. *Newton v. Shrum*, 2024 Ark. App. 507, at 8–9. Once the moving party has demonstrated an entitlement to summary judgment, Arkansas law shifts the burden to the nonmoving party, who must show that a genuine issue of material fact remains by meeting proof with proof to show a genuine issue as to a material fact. *Id.*

In medical-malpractice actions, unless the asserted negligence can be comprehended by a jury as a matter of common knowledge, a plaintiff has the additional burden of proving three propositions by expert testimony: (1) the applicable standard of care; (2) the medical provider's failure to act in accordance with that standard; and (3) that the failure was the proximate cause of the plaintiff's injuries. Ark. Code Ann. § 16-114-206(a) (Repl. 2016). That expert testimony must establish "the degree of skill and learning ordinarily possessed and used" by physicians engaged in the same type of practice in the defendant's locality or in a similar locality. *Id.* § 16-114-206(a)(1). This is known as the locality rule. *Plymate v. Martinelli*, 2013 Ark. 194. When the defendant demonstrates the plaintiff's failure to produce the requisite expert testimony, the defendant has demonstrated that no genuine

issues of material fact exist and is therefore entitled to summary judgment as a matter of law. *Johnson v. Schafer*, 2018 Ark. App. 630, 565 S.W.3d 144.

Our supreme court has endorsed the locality rule as the standard of care in Arkansas. In order to meet the locality requirement, an expert must demonstrate familiarity with the standard of practice in that or a similar locality. *Bailey-Gray v. Martinson*, 2013 Ark. App. 80, at 3 (citing *First Commercial Trust Co. v. Rank,* 323 Ark. 390, 401, 915 S.W.2d 262, 267 (1996)). Although we consider the geographical location, size, and character of the community, similarity of localities is based not on population or area but on the similarity of the local medical facilities, practices, and advantages. *Harvey v. Johnson*, 2025 Ark. App. 393, at 2–3, 715 S.W.3d 930, 931–32.

The estate argues that any evidence showing the similarity of localities, regardless of the source, should be sufficient to establish that the witness is familiar with the standard of care in a similar locality. Citing *First Commercial Trust Co*, 323 Ark. at 401, 915 S.W.2d at 267, the estate explains that because Dr. Isaacs testified that the standard of care for the management of diabetes is universal throughout the U.S., he satisfies the locality requirement. Stating that the standard of care is "universal," however, is insufficient. In fact, we have rejected this "universal standard of care" argument before. *See Plymate*, 2013 Ark. 194, at 5; *Gilbow v. Richards*, 2010 Ark. App. 780, at 4; *Harvey*, 2025 Ark. App. 393, at 4, 715 S.W.3d at 932 (stating that "Arkansas law strictly adheres to the locality rule, and to the extent Harvey suggests a national standard of care, we reject it"). Our courts have consistently

held that testimony regarding a national or general statewide standard of care is insufficient. *Id.*

The estate overstates the holding from *First Commercial*. In that case, our supreme court held that the physician, who practiced in Panama City, satisfied the locality rule when he testified to the similarities between Panama City and Hot Springs, opining that the range of medical specialties and subspecialties were comparable between the two cities, and stated that his opinion was not dependent on "any technology that was or was not available" to the Hot Springs doctor. 323 Ark. at 398, 915 S.W.2d at 265. "A Hot Springs physician, he maintained, would apply the same standards in taking the history of the case and performing the physical examination that a Panama City physician would." *Id.*

Unlike in *First Commercial*, Dr. Isaacs did not offer testimony comparing Atlanta with Cherokee Village or any similar locality; in fact, he said that he did not know the resources, customs, and habits specific to Cherokee Village, he was not familiar with "the details of Cherokee Village," and he did not know whether Cherokee Village had any "nuances related to access to care."

Nor are we persuaded by the estate's argument that Dr. Young's expert fixes the limitations in Dr. Isaac's deposition. The estate argues that Dr. Young's expert "agrees with Dr. Isaacs that the standard of care for the treatment of diabetes is the same in Atlanta as it is in Cherokee Village." But that is not what he said. Instead, he testified that he did not know of any difference in the standard of care. Not knowing of any differences is not the

same as knowing their similarities. In *Harvey*, we rejected a similar attempt to bootstrap an expert's locality requirement through defense expert testimony; we wrote:

> While Dr. Barnes testified that he is familiar with the standard of care in Benton and that it does not differ materially from many other places, he did not testify that the standard in Brooklyn, New York, is the same as in Benton. More importantly, he did not attest that Brooklyn is a similar locality or offer any comparison between the two communities as Arkansas law requires.

*Harvey*, 2025 Ark. App. 393, at 4, 715 S.W.3d at 932.

We acknowledge the estate's broader point: that any doctor, regardless of resources, skills, or education, should have been able to avoid the harm created here. But that does not eliminate the statutory requirement that the same must be established by an expert who is familiar with the locality in which the defendant physician practices. If the standard is indeed national, Dr. Isaacs should have been able to support his opinions by comparing the relevant factors between his locality and Dr. Young's. But because Dr. Isaacs did not know anything specific about Cherokee Village, he could not meaningfully compare those factors to make that connection. *See generally Gambill v. Stroud*, 258 Ark. 766, 770-A, 531 S.W.2d 945, 949 (1976) ("If the medical profession recognizes that there are standard treatments, which should be utilized nation-wide this fact should be readily susceptible of proof under the similar locality rule[.]").

Because we hold that Dr. Isaacs does not satisfy the locality requirement, we need not address the estate's argument concerning the other reasons supporting the court's finding for summary judgment.

7

The estate also argues that the circuit court erred in denying its motion for new trial for the same arguments set forth in its appellate brief. In its motion, it referred the circuit court to additional excerpts of the same deposition testimony of Dr. Isaacs and explained that the excerpts show that Dr. Isaacs satisfies the locality rule.

A motion for new trial is addressed to the sound discretion of the circuit court. *BFT Rental, LLC v. Ark. State Highway Comm'n*, 2026 Ark. App. 73, at 8, ___ S.W.3d ___, ___. We will not reverse a circuit court's refusal to grant a motion for new trial unless an abuse of discretion is shown. *Id.* An abuse of discretion means discretion improvidently exercised, i.e., exercised thoughtlessly and without due consideration. Because we hold that the circuit court did not err in granting summary judgment, we likewise hold that it did not err in denying the appellant's motion for new trial.

To the extent that the motion for new trial introduced additional transcript material that was not included with the motions for summary judgment and responsive pleadings, the proffer would be too late. It has long been the rule that a motion for new trial cannot be used to bring into the record that which does not otherwise appear in the record. *Davis v. Schneider Nat'l, Inc.*, 2013 Ark. App. 737, at 6, 431 S.W.3d 321, 325.

Moreover, the proffered testimony of Dr. Isaacs, as the estate explains, demonstrates that Dr. Isaacs "knew what the differences were between Dr. Young's practice and his own and how that would change the standard of care, specifically as to immediate access to an endocrinologist referral." But again, identifying differences is not the same as identifying similarities. The locality rule requires a comparison showing that the localities are sufficiently

similar with respect to medical facilities, practices, and advantages. Because Dr. Isaacs did not demonstrate familiarity with the practices in Cherokee Village or a similar locality, the circuit court did not abuse its discretion in denying the motion for new trial.

Affirmed.

ABRAMSON and HIXSON, JJ., agree.

*Dodds, Kidd, Ryan & Rowan*, by: *Catherine A. Ryan*, for appellant.

*Wright, Lindsey & Jennings LLP*, by: *Gary D. Marts, Jr.*, and *David C. Jung*, for appellee.